**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALEJANDRO AVILA-SALAZAR, #410618,** | ) | |
| **Petitioner,** | ) | **NO. 3:23-CV-00189** |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE FRENSLEY** |
| **GRADY PERRY, Warden,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Alejandro Avila-Salazar, an inmate of the South Central Correctional Facility in Clinton, Tennessee, filed a pro se petition under 28 U.S.C. § 2254 challenging his confinement under his convictions from the Davidson County Criminal Court for second-degree murder and attempted aggravated rape, for which Petitioner received a total effective sentence of forty years. (Doc. No. 1). The Respondent filed an Answer to the habeas petition in which he asks the Court to dismiss the petition. (Doc. No. 12).

The Court held a limited evidentiary hearing on October 21, 2025, after which Petitioner filed a Motion to Produce Transcripts of that hearing or, alternatively, a Motion to Compel Court to Issue Specific Factual Findings. (Doc. No. 38). For the reasons explained herein, the Court will deny the former motion and grant the latter motion.

The petition is ripe for review, and this Court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the Court will deny the petition, and this action will be dismissed.

## I. PETITIONER'S MOTIONS

Petitioner filed a Motion to Produce Transcripts of the Court's hearing on October 21, 2025. (Doc. No. 38). Petitioner states that, due to his limited English skills, Petitioner "can't really explain to his Prison legal helper what happened at the hearing" and requests the transcript of the Court's hearing. (*Id*. at 3). Alternatively, Petitioner asks the Court to issue specific factual findings regarding the amended judgment which was the subject of the hearing—the one for attempted aggravated rape.

Petitioner's motion does not contain factual allegations sufficient to support Petitioner's request for a free transcript of the Court's hearing. Thus, Petitioner's motion requesting the transcript will be denied. However, the Court will grant Petitioner's motion for the Court to issue specific factual findings regarding the amended judgment at issue. Those findings follow the Court's framing of the issue at hand.

## II. PROCEDURAL HISTORY

### A. Issue to be Resolved Before Proceeding to Review of Habeas Petition: If and When, and by Whom, an Amended Judgment for Attempted Aggravated Rape Was Entered

Petitioner and his co-defendant were indicted in the Davidson County Criminal Court on one count of first-degree felony murder and one count of attempted aggravated rape. (Doc. No. 11-1 at PageID 62-65). On September 6, 2006, Petitioner pleaded guilty to an amended charge of second-degree murder and to attempted aggravated rape. (*Id*. at PageID 66-68); *Avila-Salazar v. State*, No. M2008-02120-CCA-R3-PC, 2009 WL 3029604, at *1 (Tenn. Crim. App. Sept. 22, 2009), *perm. app. denied* (Tenn. 2010). Pursuant to the plea agreement, Petitioner was sentenced to forty years at 100% on the second-degree murder conviction and to twelve years at 30% on the attempted aggravated rape conviction. *Id*. Both sentences were ordered to run concurrently. *Id*. At the conclusion of the plea hearing, the trial court accepted Petitioner's guilty plea and sentenced

him consistent with the guilty plea agreement. (Doc. No. 11-1 at PageID 69; Doc. No. 11-3 at PageID 210-211). It is undisputed that Judge Mark J. Fishburn signed Petitioner's judgments (one for each conviction) that day, September 6, 2006 (Doc. No. 11-1 at PageID 70-71), and the box for community supervision for life was not checked on Petitioner's attempted aggravated rape judgment. (*Id*. at PageID 71).

The parties dispute whether, on September 6, 2006, or shortly thereafter, Judge Fishburn also signed an amended judgment on the attempted aggravated rape conviction to include a mandatory condition of lifetime community supervision. (*Id*. at PageID 72). According to Respondent, he did.[1] (*See* Doc. No. 12 at PageID 970 n.1; Doc. No. 20 at PageID 1205).

According to Respondent, all three judgments in Case No. 2005-A-32 (original felony murder, original attempted aggravated rape, and amended attempted aggravated rape—all dated September 6, 2006) were included in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office for Petitioner's first post-conviction appeal in 2008. (Doc. No. 11-1 at PageID 70-72; Doc. No. 37 at 1289-94 (as to attempted aggravated rape)). Also according to Respondent, the three judgments were included in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office for Petitioner's first habeas corpus appeal in 2014. (Doc. No. 11-12 at PageID 288-90; Doc. No. 37 at 1289-94) (as to attempted aggravated rape)).

However, when the Court contacted the Davidson County Criminal Court Clerk's Office for clarification of the docket in Case No. 2005-A-32, staff could not confirm the existence of an amended judgment dated September 6, 2006 by way of the court's electronic docket. Instead, staff

---

[1] Respondent represents that, on this purported amended judgment, the handwritten word "Amended" was added to the title of the form, and both "Amended" (handwritten) and "Judgment" (typed) were underlined by hand.

could only confirm the existence of an identical document (entitled "Amended Judgment"), bearing the same date, attached to a pro se motion filed by Petitioner on June 27, 2023. Both the motion and purported amended judgment were recently included in Petitioner's technical record sent to the Tennessee Court of Criminal Appeals when Petitioner appealed the denial of his June 27, 2023 motion by Judge Cynthia Chappell.

In its Memorandum Opinion and Order entered on March 26, 2024, the Court determined that, after careful review, each of Petitioner's then-pending motions raised issues the resolution of which require the Court to resolve, if possible, the apparent confusion about whether and when an amended judgment was entered on Petitioner's 2006 attempted aggravated rape conviction and sentence in Davidson County Criminal Court. (Doc. No. 21 at PageID# 1223). To resolve this confusion and understand its effect on the underlying state-court proceedings as well as the instant federal habeas corpus action, the Court arranged with the Davidson County Criminal Court Clerk's Office to review the archived, hard-copy file of Petitioner's underlying state-court criminal action. (*Id*. at PageID# 1224). The Court explained that, until that hard-copy file had been provided to and reviewed by the Court, the Court would not consider Petitioner's Section 2254 petition. (*Id*.)

The Davidson County Criminal Court Clerk's Office Court provided the archived hard-copy file in a timely manner, and the Court reviewed that file. Based upon that review, the Court determined that the purported September 6, 2006 amended judgment with the handwritten word "Amended" inserted before the form title of "Judgment" was not in that file. The Court determined that it could not adjudicate the pending federal habeas petition until these factual discrepancies were reconciled. (*Id*. at PageID 1239).

To aid the Court in this reconciling the discrepancies, the Court ordered the Davidson County Criminal Court Clerk ("the CrCC")[2] to retrieve the September 6, 2006 minute book of former Davidson County Criminal Court Judge Mark L. Fishburn[3] for the purpose of determining if an amended judgment was recorded in the minute book for Petitioner's attempted aggravated rape conviction on that date. (*Id.*) The Court further ordered the CrCC to provide a certified copy of the relevant page(s) of the minute book to the Court along with an affidavit attesting to what he or she found. (*Id.*)

The CrCC submitted a certified copy of the relevant pages of the minute book as determined by the Clerk. (Doc. No. 25). Those pages include what the Court has been referring to as the original judgment entered on September 6, 2006 (the judgment for attempted aggravated rape on which the box for lifetime community supervision is not checked). No amended judgment was included.

Initially, the CrCC failed to submit the required affidavit, and the Court extended the deadline for submission. (Doc. No. 27 at PageID 1252). James A. Sullivan, Director of Trial Courts and Compliance (who is not the CrCC),[4] then submitted an Affidavit attesting as follows:

> The certified copies of minutes and judgment, delivered by certified mail (mailed on 4/24/24 and delivered 4/29/24), regarding case number 2005-A-32, defendant Alejandro Avila-Salazar, are true and exact copies of the minutes filed in the appropriate minute book and the original judgment filed in the case file entered by Division VI of the Criminal Court, 20th Judicial District, Nashville and Davidson County on the September 6, 2006 court appearance. Both the minutes

[2] The Court adopts this acronym to avoid confusion between references to the Davidson County Criminal Court Clerk and references to the Clerk of Court for the Middle District of Tennessee, the latter of which is commonly referred to as "the Clerk" in district court orders.

[3] The Court takes judicial notice of Judge Fishburn's retirement in 2022. *See* https://www.tba.org/?pg=LawBlog&blAction=showEntry&blogEntry=69043 (last visited August 29, 2026).

[4] *See* https://ccc.nashville.gov/ (last visited August 29, 2026) (the Metropolitan Nashville & Davidson County website shows that Howard Gentry is the Criminal Court Clerk).

> and the judgment are appropriately signed by Judge Mark Fishburn. There are no other minute entries or judgments entered in case 2005-A-32 from September 6, 2006.

(Doc. No. 29 at PageID 1253). Mr. Sullivan's affidavit did not address the issue of the purported amended judgment. Thus, at that time there was no explanation provided by Mr. Sullivan or the CrCC as to why the September 6, 2006 minute book's relevant entry does not match the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office for Petitioner's post-conviction appeal in 2008 or for Petitioner's first habeas corpus appeal in 2014.

Noting the dispute regarding the accuracy, completeness, and authenticity of the underlying state-court record on which lower courts as well as the Tennessee Court of Criminal Appeals have relied throughout the course of Petitioner's underlying state-court criminal proceedings, the Court scheduled an evidentiary hearing limited to resolving the question of if and when an amended judgment was entered on Petitioner's attempted aggravated rape conviction and, if entered, by whom and under what circumstances. (Doc. No. 32). According to Petitioner, no such amended judgment existed until 2016.

Reviewing the procedural history of the case, one can see how the amended judgment issue surfaces and resurfaces throughout the underlying state-court litigation and again in the instant federal habeas case.[5]

After entering a plea of guilty, Petitioner did not file a direct appeal of his convictions.

On November 8, 2006, Petitioner filed a petition for post-conviction relief, which was later amended by counsel. (Doc. No. 11-1 at PageID 73-85, 100-04). Although this petition attacked the voluntariness of Petitioner's guilty plea, the petition made no reference to the omission of the community supervision for life provision on the attempted aggravated rape judgment. Following

[5] This is Petitioner's first federal habeas petition.

an evidentiary hearing, the trial court denied post-conviction relief. (*Id*. at PageID 106-17). In his post-conviction appeal, Petitioner argued that he did not voluntarily and intelligently enter the guilty plea because he received ineffective assistance of trial counsel. *Avila-Salazar*, 2009 WL 3029604, at *3. The Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief, concluding that trial counsel's performance was not deficient and that Petitioner knowingly and voluntarily entered his guilty plea. *Id*. at *4-5. The Tennessee Supreme Court denied further discretionary review. (Doc. No. 11-11).

On May 12, 2014, Petitioner filed a petition for writ of habeas corpus under Tenn. Code Ann. § 29-21-101 in Davidson County Criminal Court. (Doc. No. 11-12 at PageID 303-12). The petition challenged the jurisdictional limits of the trial court and alleged that Petitioner's judgments were void. The State responded to the petition, and the trial court summarily dismissed the petition. (*Id*. at PageID 346-49, 354-57). On appeal, Petitioner argued that the petition should not have been summarily dismissed because his indictments were constitutionally deficient and because his convictions were void due to an out-of-range sentence. *Avila-Salazar v. State*, No. M2014-01665-CCA-R3-HC, 2015 WL 739669, at *4 (Tenn. Crim. App. Feb. 20, 2015) (no perm. app. filed). The Tennessee Court of Criminal Appeals affirmed the trial court's summary dismissal. *Id*. at *7. Petitioner did not file an application for permission to appeal in the Tennessee Supreme Court.

On June 10, 2015, Petitioner filed a second petition for writ of habeas corpus in Wayne County, Tennessee, where he was incarcerated. (Doc. No. 11-17 at PageID 406-16). Petitioner argued that his conviction for attempted aggravated rape was void because the judgment did not include the mandatory provision of community supervision for life and that Petitioner should be permitted to withdraw his plea agreement because the absence of community supervision was a

material element of the agreement. *Salazar v. State*, No. M2016-01336-CCA-R3-HC, 2017 WL 2334880, at *1 (Tenn. Crim. App. May 30, 2017), *perm. app. denied* (September 21, 2017).

The Wayne County Circuit Court either was unaware that an amended judgment on the attempted aggravated rape conviction had (purportedly) been entered on the same day as the original judgments on the felony murder conviction and the attempted aggravated rape conviction or determined that no such amended judgment existed. The record on which the court relied was provided by Petitioner.[6] The State failed to note or acknowledge the amended judgment, conceding in the State's response to Petitioner's second habeas corpus petition that the attempted aggravated rape sentence was void on its face because "[a]bsent from the judgment is the mandatory condition of community supervision for life." (Doc. No. 11-17 at PageID 449).[7]

---

[6] Petitioner attached to his petition the original judgment on his attempted aggravated rape conviction; however, he did not attach the amended judgment that included the checked box for community supervision for life. He also did not provide his second-degree murder judgment of conviction. (Doc. No. 11-17 at PageID 421). At the evidentiary hearing on the petition, Petitioner admitted as an exhibit his attempted aggravated rape judgment. He did not admit his second-degree murder judgment or the amended judgment on his attempted aggravated rape conviction. (Doc. No. 11-19 at PageID 520). Because the amended judgment for attempted aggravated rape was not filed by either Petitioner or the State (and the court did not appear to conduct its own independent research), the technical record on appeal from the Wayne County decision does not include copies of the original judgments and the amended judgment for attempted aggravated rape.

[7] When asked about this concession at the October 2025 federal evidentiary hearing, Respondent's counsel (who was not the attorney representing the State during the Wayne County proceedings) stated that the concession appears to have been made based on the documents provided by Petitioner. Counsel conceded that it would have been a good idea for prior counsel to have dug a little deeper, and the Court acknowledged that current counsel is in the position of having to defend prior counsel's failure to review relevant records. In short, it appears that the Wayne County judge and then-counsel for the State relied completely on the record provided by Petitioner and did not independently review the records from Petitioner's first post-conviction appeal. Had they reviewed that technical record, they would have located the amended judgment with the box for lifetime community supervision checked. (*See* Doc. No. 37 at PageID 1289, Ex. 1) (Certificate of Appellate Record, Index listing original judgments and amended judgments, Amended Judgment dated September 6, 2006, for attempted aggravated rape showing the box checked for lifetime community supervision).

Following an evidentiary hearing, the Wayne County Circuit Court determined that, because the record demonstrated that the lifetime supervision condition was not a material element of the plea agreement, Petitioner was not entitled to withdraw his plea. *Id*. (*See* Doc. No. 11-17 at PageID 467-69). The court concluded that Petitioner's convictions "remain[ed] intact, and he [wa]s not entitled to withdraw his plea of guilty in this matter." *Id*. However, the court found than the omission of the mandatory community supervision for life sentence on the attempted aggravated rape judgment rendered the attempted aggravated rape conviction void. 2017 WL 2334880, at *1. (*See* Doc. No. 11-17 at PageID 467-68). The court transferred Petitioner's case to the Davidson County Criminal Court for entry of a corrected judgment to reflect the addition of community supervision for life. *Id*. (*See* Doc. No. 11-17 at PageID 468).

A certified copy of Petitioner's docket from the Davidson County Criminal Court dated May 25, 2023, submitted by Respondent, indicates that no such amendment to the judgment occurred. (*See* Doc. No. 12-1).[8] And as discussed previously, the Davidson County Criminal Court Clerk's Office could not confirm on March 21, 2024 that such amendment occurred following the Wayne County Circuit Court decision.

Petitioner appealed the Wayne County court's decision. On appeal, the Tennessee Court of Criminal Appeals affirmed, finding that the trial court had properly (1) denied Petitioner's habeas corpus petition and (2) transferred the case to the convicting court for entry of a corrected judgment

[8] In her August 14, 2023 Order, Judge Chappell (erroneously) states that the Davidson County Court entered the amended judgment as instructed by the Wayne County court. (*See* Doc. No. 37-6 at PageID 1389) (stating in her order that "The amended judgment was entered by this court" while noting that the amended judgment "in the record" does not have a "stamped filed date, and the 'date of entry' is the same as on the original judgment, September 6, 2006."). Judge Chappell did not note the existence of a *nunc pro tunc* order, and there has been no *nunc pro tunc* order found in the hard copy file or in any state-court technical record.

adding the condition of community supervision for life. *Avila-Salazar v. State*, No. M2016-01336-CCA-R3-HC, 2017 WL 2334880, at *3 (Tenn. Crim. App. May 30, 2017), *perm. app. denied* (Tenn. Sept. 21, 2017), *cert. denied*, 138 S. Ct. 998 (2018).[9] The Tennessee Supreme Court denied further discretionary review. (Doc. No. 11-27).

Petitioner thereafter filed a second petition for post-conviction relief on July 30, 2018 (later amended by counsel), alleging that he received ineffective assistance of counsel and, as a result, his pleas were entered unknowingly and involuntarily. (Doc. No. 11-28 at PageID 644-72, 700-01). Prior to an evidentiary hearing, the State offered to set aside the attempted aggravated rape conviction "'basically [as] a courtesy, not a legal requirement'" in an effort to settle the case;

---

[9] The appellate court decision rested on the belief that Petitioner's original judgment for attempted aggravated rape did not contain the "X" in the box for lifetime community supervision and that no amended judgment had been entered on the same day as the original judgment. In a post-evidentiary hearing filing in the instant case, counsel for Respondent affirmed the TCCA's belief was "material." (Doc. No. 37 at PageID 1291 n.3). Counsel continued:

> The TCCA, in reaching the conclusion it did in its January 15, 2020 opinion, seemingly did so with the impression that the September 6, 2006 amended judgment was entered sometime after the appellate court affirmed the Wayne County trial court's transfer of the case to Davidson County for entry of a corrected judgment adding community supervision for life. *See State v. Avila-Salazar*, No. M2019-01143-CCA-R3-PC, 2020 WL 241605, at *2 (Tenn. Crim. App. Jan. 15, 2020) ("As ordered, the Davidson County Criminal Court entered an amended judgment for attempted aggravated rape. . . . The amended judgment in the record does not have a stamped file date, and the 'date of entry' is the same as on the original judgment, September 6, 2006.") With all parties operating under this impression, this led the TCCA to conclude the amended judgment and the original judgment are not a "single judgment" under Tenn. Code Ann. § 40-30-102(c) because the supposed newly amended judgment imposed a "more punitive" sentence."

(Doc. No. 37 at PageID 1291 n.3). Counsel further states: "[I]t is unclear based on a fair reading of the record why the TCCA believed the amended order was backdated considering the absence of a *nunc pro tunc* order and the amended judgment's existence in the two technical records filed before the appellate court beginning in 2008." (*Id*.)

however, Petitioner declined this proposed resolution and sought to have both of his convictions set aside and his guilty plea withdrawn. *State v. Avila-Salazar*, No. M2019-01143-CCA-R3-PC, 2020 WL 241605, at *2 (Tenn. Crim. App. Jan. 15, 2020). The court conducted a hearing at which time the parties presented argument on whether both convictions should be set aside. The court ultimately dismissed the petition, holding that Petitioner did not meet one of the exceptions under state law that authorizes the filing of a second post-conviction petition. (Doc. No. 11-28 at PageID 708-11).

On appeal, Petitioner argued that the post-conviction court erred by dismissing the petition because it was not a second post-conviction petition and because his guilty pleas were not voluntarily, knowingly, and intelligently entered due to trial counsel's failure to advise him that he would be subjected to community supervision for life on the attempted aggravated rape conviction. *Avila-Salazar*, 2020 WL 241605, at *4. The Tennessee Court of Criminal Appeals agreed, holding:[10]

> Petitioner was not sentenced to community supervision for life at the time his first petition for post-conviction relief was decided. It would be unreasonable to expect Petitioner to have made the claim he makes in the 2018 Petition—that his guilty pleas were not entered voluntarily, knowingly, or intelligently because counsel was ineffective for failing to advise him that he would be subject to community supervision for life—before he was actually sentenced to community supervision for life, even if he was aware at an earlier date that his sentence was illegal. Petitioner's first meaningful opportunity to seek post-conviction relief on that claim

[10] Like its 2017 decision, this decision rested on the belief that the original judgment for attempted aggravated rape did not contain the "X" in the box for lifetime community supervision and that no amended judgment for attempted aggravated rape was entered on the same day as the original judgment. The Court of Criminal Appeals clearly was unaware, or did not believe, that an amended judgment for attempted aggravated rape had been entered on the same day (or shortly thereafter) as the original judgment. It could be that the appellate court thought the amended judgment contained in the technical record prepared by David C. Torrence on December 29, 2008 (assembled upon appeal of the post-conviction court's decision on remand) was the one entered by the Davidson County court as instructed by the Wayne County Court. (Doc. No. 37-1 at PageID 1302). It is clear now that the Davidson County court did not enter an amended judgment in response to the Wayne Court order.

> arose when the trial court entered an amended judgment sentencing Petitioner to community supervision for life. Because the amended judgment imposed a new, more punitive sentence, the amended judgment and the original judgment are not a "single judgment" under Tennessee Code Annotated section 40-30-102(c). Therefore, the 2018 Petition was not a second petition for post-conviction relief filed attacking a single judgment.

*Id*. at *5. The court remanded for the trial court to consider his ineffective assistance of counsel claim. *Id*.

On remand, the post-conviction court vacated Petitioner's guilty plea to the attempted aggravated rape charge but upheld the plea as to second-degree murder conviction. (Doc. No. 11-34 at PageID 795-98); *Avila-Salazar v. State*, No. M2020-01605-CCA-R3-PC, 2022 WL 1415709, at *5-6 (Tenn. Crim. App. May 4, 2022), *perm. app. denied* (Tenn. Oct. 19, 2022).

On appeal of that decision, Petitioner argued that the trial court erred by not vacating his guilty plea to second-degree murder because the absence of a sentence of community supervision for life in the original judgment was a material component of his overall plea agreement. *Id*. at *6. The State argued that the post-conviction court erred in vacating Petitioner's attempted aggravated rape conviction because Petitioner failed to prove he was prejudiced by trial counsel's alleged failure to advise him that he would be subjected to community supervision for life. *Id*. The Tennessee Court of Criminal Appeals agreed with the State and reversed the judgment of the post-conviction court and directed the state court to reinstate the conviction and sentence for attempted aggravated rape, determining that Petitioner failed to show that, but for trial counsel's deficiency, he would not have pled guilty and would have proceeded to trial. *Id*. at *8. The Tennessee Supreme Court denied further discretionary review. (Doc. No. 11-45).

On November 29, 2022, the Davidson County Criminal Court entered an order reinstating the convictions and sentences previously imposed with the special condition of mandatory lifetime supervision. (Doc. No. 37-6 at PageID 1357). The order had a file stamp date of

November 30, 2022. (*Id.*) A reinstated judgment was filed stamped December 13, 2022 (with no box checked, and no mention of, mandatory lifetime community supervision), followed by a corrected judgment signed and dated on December 12, 2022 (but not file stamped) by Davidson County Criminal Court Judge Cynthia Chappell (with the box checked for lifetime community supervision).

On March 2, 2023, the Clerk's Office received Petitioner's instant federal petition for writ of habeas corpus under 28 U.S.C. § 2254.[11] (Doc. No. 1).

On June 27, 2023, Petitioner filed a pro se motion in the Criminal Court for Davidson County, Tennessee, Division VI. (Doc. No. 18-1). By Order entered on August 14, 2023, Judge Chappell denied the motion, finding that 1) Petitioner's request for relief under Tenn. R. Crim. P. 32(f) was untimely and moot; 2) to the extent Petitioner seeks post-conviction relief, the instant motion was a subsequent petition and therefore subject to dismissal; 3) the relief sought by Petitioner did not fall within any of the limited circumstances contemplated by Tenn. Code. Ann. § 40-30-117(a) for re-opening a post-conviction petition; 4) Petitioner raised no new actionable issues, has been given his meaningful opportunity to be heard on this matter, has been heard, and has exhausted his remedies as to this judgment; and 5) Petitioner's request to modify and reduce his sentence under Tenn. R. Crim. P. 25 was untimely. (Doc. No. 18-2). Petitioner appealed Judge Chappell's ruling to the Tennessee Court of Criminal Appeals, which affirmed the lower court's

[11] Under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) and *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the Court finds that the petitioner filed his petition on February 22, 2023, the date he signed the petition (Doc. No. 1 at PageID 24), even though the Clerk of Court received and docketed the petition on March 2, 2023.

decision on August 9, 2024. The Tennessee Supreme Court declined to grant review on January 24, 2025.

**B. Findings of Fact Regarding Amended Judgment for Attempted Aggravated Rape**

Based on the October 2025 evidentiary hearing, an exhaustive review of the underlying state-court records, and the materials submitted in the instant case, the Court makes the following findings of fact.

On September 6, 2006, after Petitioner entered his guilty plea, Judge Mark J. Fishburn signed Petitioner's judgments. The box for community supervision for life was not checked on Petitioner's attempted aggravated rape judgment. On that same day, or possibly on a subsequent day shortly thereafter and without a *nunc pro tunc* order, Judge Fishburn signed an amended judgment on the attempted aggravated rape conviction with the box checked for community supervision for life. This amended judgment bore the same date as the original judgment, September 6, 2006. The Court so finds because these judgments, including the amended judgment for Attempted Aggravated Rape with the box checked for mandatory lifetime community supervision, appear in multiple certified technical records prepared by the Davidson County Criminal Clerk's Office beginning in 2008, as follows.

First, these judgments, including the Amended Judgment for Attempted Aggravated Rape with the box checked for lifetime community supervision, are located in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office on December 29, 2008 for Petitioner's first post-conviction appeal. (Doc. No. 37 at PageID 1289-90; Doc. No. 37-1 at PageID 1296-1302) (Amended Judgment for Attempted Aggravated Rape appears at PageID 1300)).

They are also located in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office on September 23, 2014 for Petitioner's first state habeas corpus appeal. (Doc. No. 37 at PageID 1290; Doc. No. 37-2 at PageID 1303-08 (Amended Judgment for Attempted Aggravated Rape appears at PageID 1307)).

The Amended Judgment for Attempted Aggravated Rape is **not** located in the technical record prepared and certified by the Wayne County Circuit Court Clerk's Office on September 23, 2016 for Petitioner's second habeas appeal. (Doc. No. 37 at PageID 1290; Doc. No. 37-3 at PageID 1309-15 (Judgment for Attempted Aggravated Rape appears at PageID 1311)). The amended judgment is not included because it was not referenced or utilized during the Wayne County proceedings by Petitioner or the State. The State conceded it did not exist, and the court did not mention it or seem to know about it.

The Amended Judgment for Attempted Aggravated Rape is located in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office on August 22, 2019 for Petitioner's second post-conviction appeal. (Doc. No. 37 at PageID 1291; Doc. No. 37-4 at PageID 1316-31 (Amended Judgment for Attempted Aggravated Rape appears at PageID 1320)).

The Amended Judgment for Attempted Aggravated Rape is located in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office on May 10, 2021 for Petitioner's second post-conviction appeal, on remand. (Doc. No. 37 at PageID 1292; Doc. No. 37-5 at PageID 1322-28 (Amended Judgment for Attempted Aggravated Rape appears at PageID 1326)).

The Amended Judgment for Attempted Aggravated Rape dated September 6, 2006 is included in the technical record prepared and certified by the Davidson County Criminal Court Clerk's Office on February 21, 2024 in appeal of Petitioner's post-conviction proceedings, after

remand. (Doc. No. 37 at PageID 1292; Doc. No. 37-6 at PageID 1329-1406) (Amended Judgment for Attempted Aggravated Rape appears at PageID 1383). In addition, an order of the Davidson County Criminal Count entered on November 29, 2022, bearing the Court Clerk's file stamp of November 30, 2022, is included (Doc. No. 37-6 at PageID 1357) which specifically notes the "special condition of mandatory lifetime community supervision." Further included in this technical record is a reinstated judgment filed stamped December 13, 2022, followed by a corrected judgment signed by Judge Chappell and dated December 12, 2022. (*See* Doc. No. 37-6 at PageID 1358 (Reinstated Judgment for Attempted Aggravated Rape with no box available to check for, and no mention of, lifetime community supervision) and 1359 (Corrected Judgment for Attempted Aggravated Rape with the box checked for lifetime community supervision)). It is unclear why the corrected judgment was signed (but not file stamped) prior to the file stamp date of the reinstated judgment.

At the October 2025 evidentiary hearing, counsel for Respondent acknowledged that there is no copy of the Amended Judgment for Attempted Aggravated Rape in the relevant minute book. She explained that the system for placing judgments into the minute book is not always a perfect system and that just because it did not end up in the minute book because of some clerical error does not mean that something nefarious happened. Counsel also acknowledged that the amended judgment is no longer present in Petitioner's hard-copy trial court file. She proffered that the last time it was known to be present in the file was in 2020 and where it went is speculation—it could have been lost, accidentally left on a copier by an employee, or inadvertently taken by an attorney or member of the public who reviewed the file. Thus, the Court finds that the absence of the amended judgment for attempted aggravated rape in the relevant minute book and the hard-copy

trial court file maintained by the Davidson County Criminal Clerk's Office does not mean that no such amended judgment was entered in 2006.

Based on the above findings of fact, the Court concludes that the following state-court decisions relied on an incorrect understanding of the record specifically as to the existence of an Amended Judgment for Attempted Aggravated Rape requiring lifetime community supervision: Petitioner's second state habeas case in Wayne County Circuit Court and the 2016 appeal therefrom; Petitioner's numerically second post-conviction petition in Davidson County Criminal Court and the 2019 appeal therefrom; the proceedings on remand and the 2021 appeal of those proceedings; the proceedings on remand in 2022; and the proceedings before Judge Chappell in 2023 and the appeal therefrom. Stated another way, these cases all proceeded as though no Amended Judgment for Attempted Aggravated Rape requiring lifetime community supervision had been entered on the day of, or shortly thereafter, the day of entry of the original judgments—which was inaccurate.

## III. STATEMENT OF THE FACTS[12]

### A. Guilty Plea Submission Hearing

During Petitioner's second post-conviction appeal (July 30, 2018), the Tennessee Court of Criminal Appeals summarized both the factual basis for the guilty plea and the events surrounding the guilty plea submission hearing as follows:

> The facts of this case as set forth by the State at Petitioner's guilty plea submission hearing on September 6, 2006, are as follows:

---

[12] This section (Statement of the Facts) contains procedural history and background of the case as set forth in prior state-court decisions relevant to the Court's resolution of the claims raised in Petitioner's federal habeas petition. Where appropriate, the Court has inserted bracketed footnotes noting the state court's reliance on the incorrect belief that no amended judgment for attempted aggravated rape existed requiring lifetime community supervision in September 2006. To be clear, these bracketed footnotes are **not** part of the underlying state-court record and are the findings of the undersigned.

Had this case gone to trial on Monday, the State's proof would have been that on September 27, 2004, customers at a laundromat in Davidson County saw two Hispanics enter the laundromat and go into the restroom, some noises were heard from the bathroom, one of the witnesses assumed one of the Hispanics was getting sick. She told an employee about that. The employee went into the room, they found Emma Fuller, who was dead at the scene. The officers and the detectives in the case identified this [Petitioner] and Jose Gutierrez as suspects. Initially both denied involvement, however, when they learned [of] a video surveillance showing their vehicle from a nearby gas station, they both confessed. They said they picked up Emma Fuller, who was just 18-years-old and paid her $20 for sex, they rode around in the van until they came to the laundromat. Initially codefendant Gutierrez had sex with the victim in the bathroom. This [Petitioner] then went into the bathroom; however, Ms. Fuller refused to have vaginal sex with him, at that point, [Petitioner] told police that he went out and got Gutierrez and that they choked Ms. Fuller to try and get her to cooperate. [Petitioner] admits attempting to penetrate Ms. Fuller while she was being choked. Ms. Fuller collapsed with blood coming out of her nose and mouth. Both defendants poured water on her from the toilet in an attempt to revive her when they left.

In addition to the evidence and the confession and the video mentioned, fingerprints from both defendants were also found in the bathroom.

Petitioner agreed to the facts as set forth by the State.

At the hearing, the trial court explained to Petitioner that he was charged with felony murder, which carried a mandatory sentence of "life in the penitentiary with parole, life in the penitentiary without parole or the death penalty, which is not being sought in this case[.]" The trial court further informed Petitioner that with a sentence of life without parole, he would have to "serve 51 years before [he] would be eligible to get out of prison[.]" Petitioner indicated that he understood. The trial court explained to Petitioner that he was also charged with attempt to commit aggravated rape, which carried a sentence of three to fifteen years and a fine of up to $10,000. Again, Petitioner indicated that he understood.

The trial court ensured that Petitioner understood that he was pleading guilty to the lesser-included offense of second-degree murder with a sentence of forty years to be served at one-hundred percent. The trial court noted that if the case had gone to trial, due to Petitioner's lack of prior felony convictions, the maximum sentence that it could have imposed was twenty-five years for second-degree murder. However, the trial court reminded Petitioner that if found guilty of first-degree murder at trial, then he would receive a mandatory life sentence. The trial court further explained:

This agreement provides for you to plead to 40 years instead of the maximum 25 years that I could impose, which is permitted by law, do you agree to waive the maximum sentence for second[-]degree murder in order to bring -- enter this

> agreement and avoid going to trial and being subject to being found guilty of first[-]degree murder, do you understand that?
>
> Petitioner ultimately said: "What I want is for you to just sentence me now to 40 years." He agreed that he was "willing to accept the 40-year sentence, which was above the range that [he] qualif[ied] in[.]" Petitioner had no questions about his charge, possible punishment, conviction offense, or actual punishment, and said that he understood his rights. He further told the trial court that he and trial counsel had discussed the case and that trial counsel had explained the evidence that the State would use against him at trial. They also discussed Petitioner's defense strategy, and he had no complaints about trial counsel's representation.
>
> The trial court then ensured that Petitioner also understood that he was pleading guilty to attempted aggravated rape with a sentence of twelve years to be served at thirty percent as a Range I offender. The trial court advised Petitioner that the sentence would run concurrently with the sentence for second-degree murder for an effective sentence of forty years at one-hundred percent. There was no mention that Petitioner would be subject to community supervision for life.

*Avila-Salazar*, 2022 WL 1415709, at *1-2.

**B. First Post-Conviction Hearing Testimony**

On appeal of the denial of Petitioner's first post-conviction petition, the Tennessee Court of Criminal Appeals summarized the evidence and testimony presented during Petitioner's first post-conviction proceedings, as follows:

> Testimony at the Petitioner's post-conviction hearing established that the charges to which the Petitioner pleaded guilty arose from an incident in which he and a codefendant raped and killed a woman in a laundromat. The Petitioner testified that his court-appointed attorney ("trial counsel") represented him throughout the plea process.
>
> The Petitioner, who had no previous experience in the legal system, testified that trial counsel met with him only three times. Each meeting occurred in jail. The Petitioner, who is not fluent in English, communicated with trial counsel using an interpreter who, he said, was not very skilled in Spanish. The Petitioner said trial counsel assured him he would receive only three to four years in jail, when in fact the Petitioner's plea agreement offered an effective sentence of forty years. The Petitioner also alleged that trial counsel did not discuss evidence with him, allow him to review discovery materials provided by the State, or tell him that the State had a surveillance video of him leaving the laundromat at which the crime occurred. Trial counsel also did not tell the Petitioner exactly what would happen if he went to trial and lost, advising only that the Petitioner would spend the rest of his life in

prison. The Petitioner said he desperately wanted to go to trial, but that trial counsel resisted and called the Petitioner "a stupid young man." The Petitioner also asserted that trial counsel never tried to suppress the statement he had made to police in which he admitted choking the victim with his belt while attempting to rape her.

Although trial counsel told the Petitioner he was allowed to speak at his plea acceptance hearing, the Petitioner testified that trial counsel instructed him not to say anything except "yes" to the judge's questions. When the judge said that the Petitioner would be sentenced to forty years, the Petitioner turned to trial counsel for clarification. Trial counsel told him not to worry and that he would receive three to four years.

On cross-examination, the Petitioner confirmed that he had, at his plea acceptance hearing, agreed that he understood he would be sentenced to forty years. He also had affirmed that he had no complaints about trial counsel at that time, that he understood the possible sentences for the offenses with which he had been charged, and that he understood the rights he was waiving by declining to go to trial. The Petitioner also confirmed that he had asked his original lawyer, an assistant public defender, to withdraw because she was "not working for him," but never complained about trial counsel or his interpreter. When asked at his post-conviction hearing why he believed trial counsel was ineffective, the Petitioner said, "As a defense attorney he should have taken at least one charge from me." The Petitioner said he would not have pleaded guilty if he and trial counsel had met more often or if he had understood his plea agreement or his legal options.

Trial counsel testified for the State at the post-conviction hearing. He said that he and the Petitioner met four times in jail and at least six more times in the courthouse. Trial counsel brought an interpreter to every meeting after the first one. The case involved "massive discovery," including audiotapes, a video, police reports, and pictures of the crime scene. Trial counsel reviewed these items with the Petitioner a number of times, including the Petitioner's inculpatory statement to police. The two did not watch the surveillance video because the Petitioner said he had already seen it.

The Petitioner's only defense was that his co-defendant was responsible; trial counsel noted, however, that the Petitioner's statement to police was contrary to this defense. The Petitioner wanted to go to trial, however. Although trial counsel advised him against it, he told the Petitioner he would try the case. Trial counsel discussed the State's offer with the Petitioner many times, relaying that the State offered a forty-year sentence at 100%, and that the Petitioner might get a maximum of 15% of that sentence reduced for good behavior. He told the Petitioner that he would receive fifty-one years if convicted of felony murder. He also discussed lesser-included offenses, but did not believe the Petitioner would be convicted of a lesser-included offense.

> Before his last meeting with the Petitioner, trial counsel had prepared to set the case for trial. During the meeting, trial counsel reiterated his opinion that the Petitioner should not go to trial. The Petitioner had tears in his eyes and agreed to plead guilty because he did not want to spend the rest of his life in jail. Trial counsel confirmed that the forty-year sentence appeared on the plea petition the Petitioner signed.
>
> Trial counsel said he never told the Petitioner he would receive three to four years in jail. He also never told the Petitioner not to say anything but "yes" at his plea acceptance hearing. Trial counsel also confirmed that he had filed a motion to suppress the Petitioner's statement to police but that the motion was denied following a hearing. The Petitioner never mentioned any problem understanding the interpreter.

*Avila-Salazar*, 2009 WL 3029604, at *1-2.

**C. Davidson County State Habeas Corpus Proceeding**

In Petitioner's first state habeas corpus appeal, the Tennessee Court of Criminal Appeals summarized Petitioner's state habeas corpus proceeding in the Davidson County Criminal Court, as follows:

> On May 12, 2014, the Petitioner filed a petition for habeas corpus relief. In it, he alleged that his confinement was illegal because he "challeng[ed] the constitutionality of his guilty pleas." He further alleged that the trial court had committed constitutional error by "failing to ensure that the [P]etitioner was aware of a direct consequence of his guilty plea." In his attached memorandum of law, the Petitioner contended that his indictment failed to sufficiently apprise him of the offense against which he was called upon to defend. In his conclusion in the memorandum of law, the Petitioner alleged:
>
>> A sentence imposed in direct contravention of a statute is void and illegal. An illegal sentence render[s] a judgment of conviction void.
>>
>> It is ineffective assistance of counsel and a constitutionally insufficient admonition from a trial court not to advise a defendant of mandatory community supervision for life.
>>
>> A trial court is constitutionally required to inform a defendant of the lifetime supervision requirement as part of the plea colloquy when a defendant pleads guilty to violations of certain enumerated code sections.
>
> The State responded:

> As to the substantive claims, the [P]etitioner makes passing references to an excessive sentence, ineffective assistance of counsel, and involuntary guilty plea. However, he offers no argument on these claims and with regards to his sentence, the judgment attached to the petition shows that he agreed to plea outside his range. In any event, claims of ineffectiveness of counsel are not cognizable in a habeas petition. Claims related to the abridgement of constitutional rights and ineffective assistance of counsel must be raised in a post-conviction petition, as they merely render judgments voidable. *Summers v. State*, 212 S.W.3d 251, 261 (Tenn. 2007).
>
> The only claim the [P]etitioner offers argument on is that his indictments are insufficient to vest jurisdiction in the trial court. "[T]he validity of an indictment and the efficacy of the resulting conviction may be addressed in a petition for habeas corpus when the indictment is so defective as to deprive the court of jurisdiction." *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998).
>
> The indictments which the [P]etitioner has attached to his petition satisfy *Hill* requirements. Both indictments cite the statutory code section as well as allege the elements of the crimes charged. Accordingly, the [P]etitioner's assertion of inadequate indictments lacks merit and the petition should be dismissed.

> The habeas corpus court filed an order summarily dismissing the petition. In the order, the court found that the indictments issued against the Petitioner were valid and the Court was within its jurisdiction to impose such sentence. It is from this judgment that the Petitioner now appeals.

*Avila-Salazar*, 2015 WL 739669, *3-4.

**D. Wayne County State Habeas Corpus Proceeding**

In Petitioner's second state habeas corpus appeal, the Tennessee Court of Criminal Appeals summarized Petitioner's state habeas corpus proceeding in the Wayne County Circuit Court, as follows:

> On January 25, 2005, the Petitioner was indicted by a Davidson County Grand Jury on one count of first degree felony murder and one count of attempted aggravated rape. On September 6, 2006, the Petitioner pled guilty to second degree murder and attempted aggravated rape. Pursuant to the plea agreement, the Petitioner received concurrent sentences of forty years for second degree murder, to be served at one

> hundred percent, and twelve years for attempted aggravated rape, to be served at thirty percent, for an effective sentence of forty years.
>
> On June 5, 2015, the Petitioner filed a pro se petition for writ of habeas corpus in the Wayne County Circuit Court, arguing, inter alia, that his conviction for attempted aggravated rape was void because the judgment form did not include the mandatory provision of community supervision for life. Consequently, the Petitioner argued that he should be permitted to withdraw his plea agreement because the absence of community supervision was a material element of the agreement. On August 20, 2015, the State filed a response, acknowledging that the Petitioner's attempted aggravated rape sentence "appears to be illegal and therefore void."[13]
>
> On May 12, 2016, the habeas corpus court held an evidentiary hearing. After hearing argument from counsel, the court found that "the record has established that the illegal sentence was not a bargained for element of the plea agreement." The habeas corpus court entered a written order on June 8, 2016, dismissing the petition. In its order, the court found that, although the omission of the mandatory community supervision for life[14] rendered the attempted aggravated rape sentence void, "nothing in the record has established that the illegal sentence was a material bargained-for element of the plea agreement, which included a 40-year sentence on a reduced charge of second degree murder." The court ordered the Petitioner's convictions "remain intact, and he is not entitled to withdraw his plea of guilty in this matter." The court also ordered the Petitioner's case transferred to the Davidson County Criminal Court for entry of a corrected judgment in count two and the addition of community supervision for life following the expiration of his sentences.[15] It is from this order that the Petitioner now timely appeals.

*Avila-Salazar*, 2017 WL 2334880, at *1.

**E. Second Post-Conviction Proceeding**

On appeal of that dismissal of Petitioner's second post-conviction petition (2018), the Tennessee Court of Criminal Appeals summarized the state-court proceedings, as follows:

---

[13] This concession rested on an incorrect understanding of the record.

[14] This finding rested on an incorrect understanding of the record.

[15] This directive was unnecessary as an amended judgment for attempted aggravated rape requiring lifetime community supervision already existed and had existed as far back as September 6, 2006 or thereabouts.

On July 30, 2018, after the trial court entered an amended judgment sentencing Petitioner to community supervision for life,[16] Petitioner filed the 2018 Petition claiming that he received ineffective assistance of counsel and as a result, his "[p]leas were entered unknowingly and involuntarily." The post-conviction court appointed counsel, who on January 29, 2019, filed an amended petition requesting that Petitioner's pleas of guilt be set aside. The amended petition stated that the State "was prepared to nolle prosequi" the attempted aggravated rape count in an effort to settle the case, but Petitioner refused and demanded that both convictions be set aside.

The State filed a response on April 12, 2019, asking that the 2018 Petition be dismissed. The response acknowledged that "the mandatory sentence of community supervision for life is a punitive consequence of a guilty plea" to attempted aggravated rape and conceded that Petitioner "was not informed of the lifetime supervision requirement" by the trial court when he entered his pleas. The State recognized that, based on *State v. Ward*, trial courts are required to inform defendants of the lifetime supervision requirement and that the failure to do so requires the conviction to be set aside "unless the State proves that the error is harmless beyond a reasonable doubt." 315 S.W.3d 461, 476 (Tenn. 2010). However, the State also noted that the supreme court in *Bush v. State*, 428 S.W.3d 1 (Tenn. 2014)[,] determined that the holding in *Ward* did not apply retroactively.

On April 24, 2019, the post-conviction court held a hearing. Post-conviction counsel announced that the State offered "to dismiss" the attempted aggravated rape count, but Petitioner did not agree to dismissal of only the attempted aggravated rape count. Counsel explained:

> The disagreement comes in that [Petitioner], in his pro se petition, has filed essentially saying that he believes that his other conviction for second-degree murder should also be set aside based on the void nature of [c]ount [two], the attempted aggravated rape. I have referenced the specific sections and pages in my January 29th filing referencing back to his July 30th filing that he believes are meritorious, and I was prepared today to stand on our pleadings. I don't believe any evidence is required at this point, and I don't think any additional arguments need to be made other than what has been filed with the [c]ourt.

The State confirmed that because Petitioner was not advised at the time he pled guilty that he would be subject to community supervision for life, the State "basically [as] a courtesy, not a legal requirement" had offered to dismiss the attempted aggravated rape conviction. However, because Petitioner would only agree to a dismissal of both counts, the State filed its response and decided to go forward with the hearing. The State claimed that the two counts were "separate and

---

[16] This factual finding rested on an incorrect understanding of the record.

distinct convictions, and . . . whether or not one is void has no bearing on whether or not the other one is void, and we would say that -- that the second-degree murder conviction is valid and should stand."

After argument of counsel, the parties submitted the issue to the post-conviction court to "make a determination as to both counts rather than a one or the other." No proof was presented, and the court took the matter under advisement.

In its June 4, 2019 order, the post-conviction court reasoned:

> Tennessee Code Annotated [section] 40-30-102(c) states that only one petition for post-conviction relief may be filed attacking a judgment. If a prior petition was resolved on its merits any subsequent petition must be summarily dismissed. A petitioner may petition to re-open if "[t]he claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required." T[enn]. C[ode] A[nn]. § 40-30-117 (emphasis in original). check
>
> *Ward v. State*, 315 S.W. 3d 461 (Tenn. 2010), established that the mandatory sentence of community supervision for life is a punitive consequence of a guilty plea to the enumerated offenses. The court stated that the trial court has an affirmative duty to ensure the defendant is informed of this requirement. If the trial court does not inform the defendant of this requirement, the conviction must be set aside unless the State proves the error is harmless beyond a reasonable doubt. *Ward* at 476.
>
> T[ennessee] C[ode] A[nnotated section] 40-30-122 further clarifies retroactivity in post-conviction proceedings. This statute states that "[a] new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty." Further, in *Bush v. State*, 428 S.W. 3d 1 (Tenn. 2014), the court held that the ruling in *Ward* did not apply retroactively. The *Bush* court found that the affirmative duty to inform did not meet the standards of T[ennessee] C[ode] A[nnotated section] 40-30-122, thus retroactivity was not required.
>
> In this case, Petitioner previously filed a post-conviction petition which was denied on its merits. The holding in *Ward* was announced in 2010 after Petitioner entered his guilty plea. Based on the holding in *Bush*, the requirement that courts inform defendants about the

> mandatory community supervision for life requirement is not retroactive. . . .

> The post-conviction court found that the 2018 Petition did "not meet one of the exceptions in T[ennessee] C[ode] A[nnotated section] 40-30-102(b) or [section] 40-30-117" allowing the filing of a second post-conviction petition. The court dismissed the 2018 Petition, and Petitioner timely appealed.

*Avila-Salazar*, 2020 WL 241605, at *2-4. The appellate court ultimately concluded:

> Petitioner was not sentenced to community supervision for life at the time his first petition for post-conviction relief was decided.[17] It would be unreasonable to expect Petitioner to have made the claim he makes in the 2018 Petition—that his guilty pleas were not entered voluntarily, knowingly, or intelligently because counsel was ineffective for failing to advise him that he would be subject to community supervision for life—before he was actually sentenced to community supervision for life, even if he was aware at an earlier date that his sentence was illegal. Petitioner's first meaningful opportunity to seek post-conviction relief on that claim arose when the trial court entered an amended judgment sentencing Petitioner to community supervision for life. Because the amended judgment imposed a new, more punitive sentence, the amended judgment and the original judgment are not a "single judgment" under Tennessee Code Annotated section 40-30-102(c). Therefore, the 2018 Petition was not a second petition for post-conviction relief filed attacking a single judgment.
>
> * * *
>
> We, therefore, remand the matter to the post-conviction court for a ruling on the merits of the 2018 Petition.

*Id*. at *5 (footnote omitted).

**F. Remanded Post-Conviction Proceeding**

After remanding Petitioner's second post-conviction proceeding back to the Davidson County Criminal Court for further development, the Tennessee Court of Criminal Appeals summarized the remand proceedings, as follows:

> This court remanded the case for a ruling on the merits of Petitioner's claim of ineffective assistance of counsel. On remand, the post-conviction court vacated Petitioner's guilty plea to attempted aggravated rape but upheld the plea as to

[17] This finding rested on an incorrect understanding of the record.

second-degree murder. In reaching its decision, the post-conviction court concluded:

> There was no hearing conducted in this case, and both parties agreed to go forward on the filings submitted. In his petition, Petitioner asserted that he was "specifically advised by his attorney of record . . . that he would not receive anything approaching a life sentence or any lifetime supervision that extended past his lawful period of confinement." He further asserted that he would not have accepted the plea had he known of the mandatory community supervision for life component. The State offered no evidence to rebut those assertions, nor did it contest that Petitioner was prejudiced by his attorney's and this court's failure to advise him of this condition of his plea to Count 2. Therefore, Petitioner's guilty plea to Count 2 of the indictment in this case is hereby VACATED. The conviction as to Count 1, which was found by the appellate court to be the material element in Petitioner's guilty plea, stands.

*Avila-Salazar*, 2022 WL 1415709, at *5-6. Petitioner appealed, and the appellate court ultimately reversed the judgment of the post-conviction court and remanded the case for reinstatement of the original judgment of conviction and the sentence previously imposed for attempted aggravated rape. *Id*. at *8.

## IV. TIMELINESS OF PETITION

Respondent contends that Petitioner's instant federal habeas petition should be denied because it is time-barred. (Doc. No. 12 at PageID 991).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified, *inter alia*, at 28 U.S.C. §§ 2244, *et seq*.), prisoners have one year within which to file a petition for habeas corpus relief which runs from the latest of four (4) circumstances, one of which is relevant here—"the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).

The AEDPA's one-year limitations period is tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2); *see Ege v. Yukins*, 485 F.3d 364, 371 (6th Cir. 2007). However, any lapse of time before a state application is properly filed is counted against the one-year limitations period. *See Bennett v. Artuz*, 199 F.3d 116, 122 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000). When the state collateral proceeding that tolled the one-year limitations period concludes, the limitations period begins to run again at the point where it was tolled rather than beginning anew. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)).

In his federal habeas petition, Petitioner asserts that his petition was timely filed. (*See* Doc. No.1 at PageID 3). Petitioner contends that his judgment was amended on June 3, 2016[18] following the denial of state habeas relief in Wayne County Circuit Court, creating a "new judgment" which became the operative judgment and restarted the AEDPA limitations period.[19]

Respondent, on the other hand, argues that Petitioner's September 6, 2006 judgment is the operative judgment for Section 2244(d)(1)(A) purposes. (*See* Doc. No. 12 at PageID 991). According to Respondent,

> Petitioner's judgments became final thirty days later on October 6, 2006, after the time in which Petitioner could have, but did not, attempt to withdraw his guilty plea expired. On the following day, October 7, 2006, Petitioner's statute of limitations commenced and ran for 42 days until it was tolled by the filing of his pro se petition for post-conviction relief on November 17, 2006. (*Id*. at PageID 73-87.) It is purported in the certificate of service that the post-conviction petition was mailed on November 16, 2006. (*Id*. at PageID 87.) Petitioner timely appealed the trial court's adverse ruling. (*Id*. at PageID 119.) The Tennessee Court of Criminal Appeals entered its judgment in Petitioner's post-conviction appeal on September 22, 2009. (ECF No. 11-8.) Petitioner filed an application to appeal to the Tennessee Supreme Court, which was subsequently denied on February 22, 2010. (ECF Nos. 11-9, 11-11.) Thus, his judgment became final, for purposes of 28 U.S.C. § 2244(d)(2), on the following day because the one-year statute of limitations is not

[18] June 3, 2016, is the date of the order entered by the Wayne County Circuit Court.

[19] We now know that no new judgment was entered in response to the Wayne County order, but no court had entered orders to that effect at the time Petitioner filed his federal habeas petition. In fact, orders had been entered stating the contrary, including decisions by the state's appellate court.

> tolled during the ninety days a petitioner could file a writ of certiorari in the Supreme Court following the conclusion of state collateral review. *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) ("The application for state postconviction review is therefore not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").
>
> On February 23, 2010, following the Tennessee Supreme Court denial of discretionary review, Petitioner's statute of limitations commenced and continued to run for 323 days until it expired on January 11, 2011. Even assuming for the sake of argument that Petitioner placed the [federal habeas] petition in the prison [m]ailing system on February 22, 2023, (ECF No. 1, PageID 24), and further assuming that this qualifies as Petitioner's filing date under the prison mailbox rule, the petition was filed twelve years beyond the expiration of the one-year statute of limitations under 28 U.S.C. § 2244(d). Therefore, this Court should dismiss the petition for writ of habeas corpus as it is time-barred.

(Doc. No. 12 at PageID 991-92) (footnotes omitted).

Curiously, Respondent does not address the effect of the 2022 reinstated judgment or corrected judgment[20] entered by Judge Chappell and whether either of those judgments constituted a "new" judgment resetting the AEDPA statute of limitations. *See Lewis v. Tennessee*, No. 3:19-CV-411-DCLC-DCP, 2020 WL 2850748, at *1 n.1 (E.D. Tenn. June 2, 2020) (where respondent based its argument that the petition was time barred on the entry of initial criminal judgments against petitioner in 2014 and failed to address the fact that the state court later entered an order that extended petitioner's probationary term and altered the amount of his monthly payments in 2016, citing *Crangle*, the court declined to address whether petitioner's Section 2254 claims were time barred); *Murphy v. Parris*, No. 1:18-cv-00013, 2019 WL 1383466, at *3 (M.D. Tenn. Mar. 27, 2019) (quoting *Crangle*) (finding that "it is undisputed that the state court's corrected judgment reflecting the mandatory sentence of community supervision for life amounts to a 'new sentence

[20] Incredulously, the reinstated judgment does not contain the mandatory lifetime supervision language. The corrected judgment does.

[that] not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge the judgment.'").

*Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016),[21] provides support for the timeliness of Petitioner's instant petition, although the issues previously discussed herein (relating to the confusion over whether and when an amended judgment for attempted aggravated rape was entered) complicate the analysis. Crangle argued in his federal habeas petition that his plea was constitutionally invalid because it was not made knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. *Id*. at 674. Specifically, he argued that the state trial court misrepresented his maximum sentence by informing him that he would not be subject to post-release control. *Id*. The federal district court dismissed Crangle's petition as untimely. *Id*. at 675.

On appeal, Crangle argued that, because the state-court order imposing post-release control was a new judgment, his petition was timely under 28 U.S.C. § 2244(d)(1)(A). The Sixth Circuit agreed, finding that the state trial court's *nunc pro tunc* order correcting Crangle's judgment of conviction materially increased potential restrictions on his liberty and thus constituted a new judgment that reset AEDPA's one-year limitations period to file his federal habeas petition. The Court emphasized that "'[t]he entry of a new judgment normally resets the statute-of-limitations clock' under 28 U.S.C. § 2244(d)(1)(A) and § 2254(a). Accordingly, because '[t]he sentence is the judgment,' *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quotation omitted), a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts

---

[21] *See In re Stansell*, 828 F.3d 412 (6th Cir. 2016)) ("*Crangle* represents the culmination of a line of cases having to do with when an intervening event (either a successful federal habeas petition resulting in a new sentencing in state court or an after-the-fact imposition by a state trial court of a mandatory condition of post-release control) results in a new judgment and reinitiates a new 1-year period of limitations.").

AEDPA's one-year window to challenge that judgment." *Id*. at 679 (quoting *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015)). Subsequent cases have clarified that "a limited sentencing resulting in a better-than-before sentence" for the petitioner does not reset the AEDPA statute of limitations clock. *See e.g., Freeman v. Wainwright*, 959 F.3d 226, 239-30 (6th Cir. 2020) (because removing post-release control materially decreases the potential restrictions on a prisoner's liberty and leaves the prisoner better off, petitioner's initial judgment was not disturbed, and he was not entitled to a restarting of the AEDPA clock).

If the entry of Judge Chappell's corrected judgment left Petitioner with a "worse-than-before-sentence" and reset the AEDPA statute of limitations clock,[22] under *Crangle* Petitioner would have had one year from the date he learned of that corrected judgment (which was signed by the judge on December 12, 2022)[23] to file the instant habeas petition. Applying the prison

---

[22] What is apparent now is that Petitioner should not have received the benefit of a second post-conviction proceeding. His second bite at the apple, so to speak, was based on the incorrect belief that no amended judgment for attempted aggravated rape imposing lifetime community supervision existed until after the Wayne County Circuit Court decision. Petitioner's second post-conviction proceeding ultimately ended in November 2022 with the reinstatement of his attempted aggravated rape conviction including the condition of mandatory lifetime supervision.

At that time the State attorney, the courts, and Petitioner would have understood this "corrected" sentence to have been a "worse-than-before" sentence, having proceeded on the mistaken belief that Petitioner originally had *not* been sentenced to mandatory lifetime supervision in 2006. Indeed, the Tennessee Court of Criminal Appeals specifically stated that the amended judgment imposing community supervision for life (which the court mistakenly believed was entered after the Wayne County Circuit Court order) "imposed a new, *more punitive* sentence" than Petitioner's original judgment for attempted aggravated rape. *Avila-Salazar*, 2020 WL 241605, at *3-4 (emphasis in original). We know now, however, that Petitioner had been sentenced to the same condition in 2006. Trying to analyze this confusing chain of events under the Sixth Circuit's framework of "[a] new, worse-than-before sentence" (so that the Court can determine whether the November 2022 judgment "amounts to a new judgment") proves problematic. *Crangle*, 838 F.3d at 678.

[23] This part of the analysis also is problematic because the reinstated judgment was file stamped December 13, 2022 (bearing Judge Chappell's undated signature), followed by a corrected judgment signed and dated by the judge on December 12, 2022 (with no file stamp). (*See* Doc. No.

mailbox rule (*see supra* at 13 n.11), Petitioner filed his petition on February 22, 2023, which would be well within one year.

In any event, the Court need not decide this issue because, even if the petition was untimely filed, the Court finds that equitable tolling is appropriate under the circumstances presented here.

The "one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances." *Ata v. Scutt*, 622 F.3d 736, 741 (6th Cir. 2011) (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). A petitioner bears the burden of showing he is entitled to equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir.2003). A petitioner seeking equitable tolling must establish that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The diligence required for equitable tolling purposes is "'reasonable diligence,'" not "'maximum feasible diligence.'" *Id.* at 653 (quoting *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996)). Equitable tolling is applied "sparingly." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). A court must decide whether to toll the statute on a case-by-case basis. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). It is a "fact-intensive inquiry" that eschews "mechanical rules." *Holland v. Florida*, 560 U.S. 631, 650, 654 (2020).

---

37-6 at PageID 1358 (Reinstated Judgment for Attempted Aggravated Rape with no box available to check for, and no mention of, lifetime community supervision) and 1359 (Corrected Judgment for Attempted Aggravated Rape with the box checked for lifetime community supervision). It is unclear why the corrected judgment was signed *prior to* the file stamp date of the reinstated judgment. Perhaps both the reinstated judgment and corrected judgment were signed by Judge Chappell on the same day (December 12, 2022) and only the reinstated judgment was filed stamped on the following day. Regardless, it is almost inconceivable that the reinstated judgment did not include the condition of lifetime community supervision, given the appellate court's decision remanding the case.

Petitioner points to "the utter confusion and chaos surrounding the facts of the instant case," asserting "that neither the lower court nor the State can declare with any appreciable clarity when Petitioner's judgments were actually amended to reflect lifetime supervision." (emphasis in original removed). (Doc. No. 37-15 at PageID 1576). Given the case history as this Court has come to understand it, Petitioner's frustration is understandable. For unknown reasons, numerous state court judges—including appellate judges—have rendered decisions in Petitioner's underlying state cases reflecting the mistaken belief that no amended judgment for attempted aggravated rape had been entered prior to the 2016 decision of the Wayne County Circuit Court. At least one attorney for the State conceded the amended judgment did not exist, apparently without conducting an independent review of technical records. When this issue was brought to the undersigned's attention, it required a physical trip to the Davidson County Clerk's Office, multiple Court Orders, an evidentiary hearing, and an exacting review of twenty years' worth of records to ascertain the status of the attempted aggravated rape judgment. These extraordinary circumstances stood in Petitioner's way and caused confusion as to which judgment was the operative judgment for Section 2244(d)(1)(A) purposes, determining when the instant federal habeas petition must be filed.[24]

---

[24] Respondent argues that the amended judgment for attempted aggravated rape was contained in the technical record compiled for Petitioner's first post-conviction appeal, thus, Petitioner knew or should have known at that time that he was subject to lifetime community supervision and should have raised the issue long before now. (Doc. No. 12 at PageID 994). Respondent's argument would be more persuasive were it not for the repeated confusion about the existence of that judgment for the better of two decades which included a concession on the record by the State's attorney that no such judgment existed.

Likewise, the Court places little weight on the fact that, as Respondent points out, Petitioner attached the two original judgments and the amended judgment for attempted aggravated rape to his 2023 motion filed in Davidson County Criminal Court. (*See* Doc. No. 20 at PageID 1205) (citing Doc. No. 18-1 at PageID 1112 n.1). It seems reasonable to the Court that Petitioner was at

In *Millis v. Rewerts*, 181 F.4th 669 (6th Cir. 2026), a pro se prisoner pursuing federal habeas relief received "multiple, conflicting communications" from the clerk's office of the Michigan Supreme Court, the last of which informed the petitioner that his application for leave to appeal had been "accepted for filing" and was "complete." *Id*. at 670, 675. Five months later, Millis contacted the Michigan Supreme Court for a status update on his appeal and learned that his application actually had not been accepted as timely. Attempting to meet the AEDPA deadline, Millis filed his federal habeas petition twelve days later. The district court summarily dismissed the petition as untimely. The Sixth Circuit reversed and remanded, finding that Millis had demonstrated that his arguments regarding equitable tolling were "sufficiently weighty to warrant a response from the state." *Id*. at 673. The Court observed that, "up until the final April 25, 2025 letter, Millis's correspondence with the clerk's office could have led of person of reasonable diligence to believe that his appeal had been properly docketed and would be addressed in due course." *Id*. Continuing, the Court reasoned:

> Given the clerk's office's pattern of sua sponte updating Millis on his application status as it considered new information, it was not necessarily unreasonable for Millis to believe that the conflicting information was a series of corrections from the clerk's office, that the last-in-time letter he received was the operative one, and that the office would continue to correct itself as necessary. An alternative conclusion on this set of facts would place the onus on Millis (and petitioners in similar situations) to contact the clerk's office after each status update to ask *"are you sure?"* Put another way, it would unreasonably saddle petitioners in Millis's situation with the burden of ensuring court communications are correct, rather than placing the burden where it belongs: on the courts.

*Id*. at 674-75 (emphasis added). Pointing to Millis's filing of his habeas petition twelve days after learning that the Michigan Supreme Court had, in fact, not accepted his application, the Court noted that "[t]he quick turnaround of his habeas petition filing suggests that [Millis] would not

---

least as confused and uncertain as the State's attorney and the state courts regarding when that amended judgment was entered.

have 'sat on his rights' if he had not been potentially misled by the clerk's office." *Id*. at 676 (quoting *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011)).

Here, each time Petitioned pursued relief at the state-court level, essentially asking the courts, "Are you sure about the amended judgment?", the answer he received was, at best, incorrect and, at worst, misleading:[25] There was no amended judgment entered on September 6, 2006, for your attempted aggravated rape conviction. The State's attorney provided the same answer on the record.

"[E]quitable tolling might well be appropriate" where "the petitioner is affirmatively misled, either by the court or by the State." *Pliler v. Ford*, 524 U.S. 222, 235 (2004) (O'Connor, J., concurring). And equitable tolling of Petitioner's AEDPA statute of limitations is appropriate here. *See Wiggins v. Rewerts*, No. 2:20-CV-11546-TGB-EAS, 2023 WL 3186971, at *6 (E.D. Mich. Apr. 30, 2023) (applying equitable tolling to untimely filed habeas petition because, "[a]s a pro se party navigating a procedurally complex case," petitioner's confusion over the correct filing deadline was "reasonable" after finding that the court's instructions to petitioner were confusing); *Williams v. Birkett*, 895 F. Supp.2d 864, 869 (E.D. Mich. 2012) (finding "[t]he specific circumstances of petitioner's situation mandate the equitable tolling of the limitations period to correct an injustice in this case" where petitioner suffered from a learning disability and had been a special education student since the first grade, the trial court's advice about petitioner's appellate court rights was "confusing", and the "manner in which the second motion was adjudicated by the trial court" could have misled the petitioner).

---

[25] To be clear, the Court has found no evidence that any person or entity intentionally misled Petitioner regarding the existence of the amended judgment for attempted aggravated rape. It certainly does appear that Petitioner was repeatedly misled, albeit inadvertently.

Over the years Petitioner has diligently pursued his rights. Acting at times pro se and at times counseled, he has pursued post-conviction relief and state habeas relief. He has appealed multiple decisions to the Tennessee Court of Criminal Appeals. He sought discretionary review by the Tennessee Supreme Court on more than one occasion. His diligence was reasonable. Petitioner was not required to exercise "maximum feasible diligence." *Holland*, 560 U.S. at 653. With respect to his knowledge of the existence of the amended judgment for attempted aggravated rape, the Court does not believe that Petitioner should be held to a higher standard than the prior State's attorney—an officer of the Court—who conceded on record that the amended judgment did not exist when he, too, could have reviewed but did not review that same technical record and learn that it did.

The Court finds that Petitioner has met his burden of showing entitlement to equitable tolling, should it be determined that his federal habeas petition was untimely filed. The Court now will move to a merits review of the petition.

## V. STANDARD OF REVIEW

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of the AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S .C. § 2254(d). Under the AEDPA, the court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." *Id*. (quoting *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003)).

State court factual determinations are unreasonable only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not

have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410); *see also Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'").

Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "*Pinholster* plainly bans [any] attempt to obtain review of the merits of claims presented in state court in light of facts that were not presented in state court." *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013); *see also Sheppard v. Bagley*, 657 F.3d 338, 343-44 (6th Cir. 2011) (applying *Pinholster* and 28 U.S.C § 2254(e)(2) to decline consideration of testimony from habeas petitioner's evidentiary hearing).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29

(2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim." *Id*. (citation omitted); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). Claims that are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002).

A procedural default can occur in one of two ways. First, a procedural default may occur if the state court actually "relied on the procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U. S. 320, 327 (1985). Second, if a petitioner fails to properly exhaust a claim in state court, and the claim can no longer be raised in state proceedings because of a failure to follow state procedure for presenting such a claim, the claim is technically exhausted, but a petitioner is not automatically entitled to present his claim on federal habeas review, as his claim is procedurally defaulted. *Woodford v. Ngo*, 548 U. S. 81, 126 (2006).

"In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." *Id*. at 386. The burden of showing cause and prejudice to excuse defaulted claims

is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)). A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id*.

Constitutionally ineffective assistance of trial or appellate counsel may constitute cause. *Murray*, 477 U.S. at 488-89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id*. If the ineffective assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

Petitioners in Tennessee also can establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial review post-conviction proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 5-6 (2012) (creating an exception to *Coleman* where state law prohibits ineffective assistance claims on direct appeal); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (extending *Martinez* to states with procedural frameworks that make meaningful opportunity to raise ineffective assistance claim on direct appeal unlikely); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* and *Trevino* apply in Tennessee). The Supreme Court's creation in *Martinez* of a narrow exception to the procedural default bar stemmed from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if

undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 566 U.S. at 13. In other words, *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See id*. at 13-15. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court also has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496). A petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin v. Perkins*, 569 U. S. 383, 399 (2013) (internal quotation marks omitted) (quoting *Schlup v. Delo*, 513 U. S. 298, 327 (1995)). For a petitioner to "pass through the gateway" and be permitted to argue the merits of his defaulted claims, he must show "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of

non-harmless constitutional error." *Id*. at 401 (internal quotation marks omitted) (quoting *Schlup*, 513 U. S. at 316).

With these principles in mind, the Court will turn to the examination of the claims raised in Avila-Salazar's petition for habeas relief.

**D. ANALYSIS**

Petitioner identifies four claims[26] in his federal habeas petition: (1) "[t]he newly-issued amended judgments constitute a material breach of the original Plea agreement" (Doc. No. 1 at PageID 6); (2) "Petitioner's pleas were entered unknowingly and involuntarily in light of the newly-issued amended judgment" for attempted aggravated rape (*id*.); trial counsel "was ineffective for failing to ensure that Petitioner's pleas were knowing and voluntary" (*id*. at PageID 19); and trial counsel "was ineffective for failing to ensure that Petitioner's pleas were knowing and voluntary in the context of his mandatory lifetime supervision as a sexual predator" (*id*.).[27]

Petitioner's claims are cognizable under the Habeas Rules, but these claims do not afford habeas relief because his claims are without merit or are procedurally defaulted without sufficient cause.

---

[26] Respondent identifies three claims in its Answer to the habeas petition. (Doc. No. 12 at PageID 984, 1007). Respondent appears to have considered Claims III and IV (both ineffective assistance of trial counsel claims) as one claim. As to Claim II, Respondent argues that, to the extent Petitioner asserts a claim that his guilty plea was unknowingly and involuntarily entered for reasons other than ineffective assistance of trial counsel, such claim is procedurally defaulted without cause. (*See id*. at PageID 1007).

[27] Of note is the finding in *Harris v. Holloway*, No. 1:12-cv-01204-JDB-ebg, 2015 WL 3823945, at *14 (W.D. Tenn. June 19, 2015), that the failure of the Carroll County Circuit Court to appoint counsel before entry of the amended judgment on the petitioner's aggravated rape conviction arguably states a federal constitutional claim. Harris, as Petitioner here (had he raised it), procedurally defaulted the claim because he failed to raise the claim to the state courts.

1. Claim 1: Breach of Plea Agreement

In Claim 1, Petitioner alleges "[t]he newly-issued amended judgments constitute a material breach of the original Plea agreement pursuant to *Santobello v. United States*, 404 U.S. 257 (1971)." (Doc. No. 1 at PageID 6).

Petitioner exhausted this claim.[28] In his third post-conviction appeal after the post-conviction trial court vacated his guilty plea as to attempted aggravated rape, Petitioner argued that the post-conviction court erred by not also vacating his guilty plea to second-degree murder. He contended that the guilty plea to both counts of the indictment was "a single contractual agreement, and that any breach is material." *Avila-Salazar*, 2022 WL 1415709, at *6. Petitioner further argued that the plea agreement "was a single document that listed both counts and conditions of the plea," that he signed "this sole agreement and believed that the plea agreements to both counts were a single, inseverable agreement," and the "omission of the lifetime supervision requirement was an inducement to sign the plea agreement to both counts, because he wouldn't have accepted the plea had he known of this condition." *Id*.

The Tennessee Court of Criminal Appeals found that there was no material breach of the plea agreement by the State. *Id*. at *8. The court reasoned:

> The majority of Petitioner's guilty plea hearing was focused on Petitioner's plea to second-degree murder to avoid a life sentence for felony murder. There was no promise or agreement by the State that Petitioner would not be subject to mandatory lifetime community supervision. There is no indication in the record that Petitioner relied on any such promise or agreement concerning lifetime community supervision in coming to terms with the State. *Alejandro Avila-Salazar*, 2017 WL 2334880, at *3; *Matthew B. Foley v. State*, M2018-01963-CCA-R3-PC, 2020 WL 957660, at *6 (Tenn. Crim. App., Feb. 27, 2020) *no perm. app. filed*. Petitioner is not entitled to relief on this issue.

[28] Respondent implicitly concedes this claim was exhausted. (Doc. No. 12 at PageID 995).

*Avila-Salazar*, 2022 WL 1415709, at *8. The court reversed the judgment of the post-conviction court and remanded the case for reinstatement of the original judgment of conviction and the sentence previously imposed for attempted aggravated rape. *Id*.

In reviewing the state court decision, the Court must first determine what standard controls the analysis. Petitioner contends that AEDPA deference is inapplicable when reviewing this claim because the Tennessee Court of Criminal Appeals did not adjudicate his breach of plea agreement claim as a federal claim. (Doc. No. 1 at PageID 17-18). According to Petitioner, the appellate court ignored his reliance on the *Santobello* decision "despite being fairly presented at all relevant levels of the State appellate procedures."[29] (Doc. No. 1 at PageID 17). Respondent contends that, although the appellate court did not explicitly reference *Santobello* or any other federal caselaw, the court implicitly cited to federal law by citing to *Foley v. State*, M2018-01963-CCAR3-PC, 2020 WL 957660 (Tenn. Crim. App. Feb. 27, 2020), "which utilized the same quotation and string citation to *Santobello* that Petitioner used in his brief before the appellate court." (Doc. No. 12 at PageID 999). Moreover, Respondent continues, "the appellate court's reasoning in adjudicating the instant claim makes clear that the court considered the applicable federal law in reaching its conclusion that there was no material breach in Petitioner's case." (*Id.*)

For AEDPA deference to apply, the state-court adjudication must have been "on the merits." 28 U.S.C. § 2254(d). A judgment is typically on the merits if it is "delivered after the court . . . heard and evaluated the evidence and the parties' substantive arguments." *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (emphasis omitted). Thus, a decision that is "on the merits" is one based on "substance, not form." *English v. Berghuis*, 900 F.3d 804, 812 (6th Cir. 2018) (citing *Johnson*,

---

[29] Petitioner does not argue that the appellate court failed to adjudicate the claim on its merits, such as relying on a state procedural requirement; rather, Petitioner appears to argue that the appellate court adjudicated the claim on its merits as a state claim instead of a federal claim.

568 U.S. at 302). In making this determination, the reviewing court applies a "strong but rebuttable presumption that a federal claim was adjudicated on the merits by the state court." *Id*. at 811 (internal quotation marks omitted). Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99, 131. Even if a state court denies a motion without explicitly addressing a claim within, the on-the-merits presumption still applies. *Johnson*, 568 U.S. at 301.

"The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Harrington*, 562 U.S. at 100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). For example, if the state court decided the issue based on a state standard different from the federal standard, or less protective than the federal standard, the presumption arguably might be overcome. *Id*. at 99-100. Likewise, if the state court "simply mentioned in passing or . . . buried in a string cite" the federal constitutional provision or precedent, the presumption might be rebuttable. *Id*. And if the state decided the case on separate grounds and explicitly declined to address the particular claim at issue, the presumption may be overcome. *See Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007). Where circumstances indicate that the state court has not addressed the merits of a claim, the court conducts a *de novo* review, the type of review Petitioner seeks here. *See Johnson*, 568 U.S. at 30; *Warren*, 959 F.3d 704, 721 (6th Cir. 2020) ("AEDPA deference" under § 2254(d) applies only if the claim was adjudicated on the merits in the state court; if it was not, "the petitioner's claim is reviewed de novo as it would be on direct appeal.").

While Petitioner is correct that the Tennessee Court of Criminal Appeals did not explicitly reference *Santobello* or any other federal caselaw in its analysis and disposition of his breach of

plea agreement claim, Petitioner has not overcome the presumption that his federal claim was adjudicated on the merits by the state court.

Petitioner fairly and adequately presented his breach of plea agreement claim to the state courts as a federal constitutional claim. Petitioner cited *Santobello* in his 2018 post-conviction petition (Doc. No. 11-28 at PageID 649). In the pertinent appellant's brief, he listed *Santobello* in the Table of Authorities and relied on the *Foley* case which quoted *Santobello* in his discussion of the law regarding the breach of a plea agreement as a ground for post-conviction relief (*see* Doc. No. 11-39 at PageID 868) when arguing that the court erred in not vacating his second-degree murder judgment because the plea agreement "as to both counts was a single contractual agreement, and . . . any breach is material." (*Id*. at PageID 867). *See Harris v. Lee*, No. 1:12-cv-01204-JDB-egb, 2015 WL 7458650, at *4 (W.D. Tenn. Nov. 23, 2015) (finding that petitioner's second post-conviction petition and his reply brief arguably alerted the Tennessee Court of Criminal Appeals to the federal nature of his claim where petitioner listed the claim a "BREACHED PLEA AGREEMENT, in violation of the due process clause of the Tennessee and UNITED States constitutions") (emphasis in original). *Cf. Harris v. Hollway*, No. 1:12-cv-01204-JBD-egb, 2015 WL 3823945, at *15-*16 (W.D. Tenn. June 19, 2015) (finding that petitioner failed to properly exhaust a federal breach of plea agreement claim where, in his brief to the Tennessee Court of Criminal Appeals on post-conviction appeal, he did not cite to or refer to the United States Constitution, nor did he reference any federal case employing federal constitutional analysis; "The general reference to 'due process' is insufficient to alter a state court that Harris also intended to assert a federal constitutional claim.").

In reviewing Petitioner's breach of plea agreement claim in 2022, the Tennessee Court of Criminal Appeals relied on its 2017 decision affirming the judgment of the Wayne County Circuit

Court. 2022 WL 1415709, at *8 (citing *Avila-Salazar*, 2017 WL 2334880, at *1). The 2017 decision relied on cases explaining state habeas and contract law, one of which, *Summers v. Fortner*, 267 S.W.3d 1, 8 (Tenn. Crim. App. 2008)), quoted *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Bagley*, 473 U.S. 667, 682 (1985) for the proposition that "materiality exists when 'there is a reasonable probability' of a change in the outcome of the proceedings." *Avila-Salazar*, 2017 WL 2334880, at *2.

The appellate court's 2017 decision also relied on *Foley*, a Tennessee Court of Criminal Appeals decision, to support its finding that there was no indication in the record that Petitioner relied on a promise or agreement by the State that Petitioner would not be subject to mandatory lifetime community supervision "in coming to terms with the State." *Avila-Salazar*, 2022 WL 1415709, at *8 (citing *Foley v. State*, No. M2018-01963-CCA-R3-PC, 2020 WL 957660, *6 (Tenn. Crim. App. Feb. 27, 2020)). *Foley* relied on both state law and federal law in addressing breach of plea agreements. 2020 WL 957660, at *6 (citing *United States v. Ready*, 82 F.3d 551, 558 2d Cir. 1996); *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)). One of the state cases relied on by *Foley* quoted the *Santobello* case. *Foley*, 2020 WL 957660, at *6 (citing *Eric Boyd v. State*, No. E2001-02069-CCA-R3-PC, 2002 WL 31289175, at *2 (Tenn. Crim. App. Oct. 10, 2002) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)), *perm. app. denied* (Tenn. Feb. 18, 2013)).

Petitioner has not demonstrated that the state-court failed to appreciate the constitutional dimension of his breach of plea agreement claim. The 2017 and 2022 decisions of the appellate court, combined with Petitioner's petition and briefs which clearly assert a federal claim, show that the state court "heard and evaluated the evidence and the parties' substantive arguments" related to the federal breach of plea agreement claim. *Williams*, 568 U.S. at 302. That the court did

not specifically identify the claim as a federal claim in its most recent analysis does not change the Court's conclusion. *See Helms v. Bowerman*, 785 F. App'x 272, 280 (6th Cir. 2019) (finding that the state court adjudicated a federal habeas claim, and that the court "declined to comment on the due-process issue does not change the calculation."). *See also Early v. Packer*, 537 U.S. 3, 8 (2002) (Section 2254(d) "does not require citation of [Supreme Court] cases-indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

To the extent there is any uncertainty as to why the Tennessee Court of Criminal Appeals affirmed the denial of Petitioner's breach of plea agreement claim, the Court "looks through" the appellate court's reasoning to the last state-court decision that does provide a relevant rationale. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (explaining that, when the last state-court decision does not lay out all of its reasons, we "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."); *see Helms v. Bowerman*, 785 F. App'x 274, 281 (6th Cir. 2019) (same). The appellate court's 2017 decision clearly cited, considered, and applied federal law in adjudicating Petitioner's breach of plea agreement claim. Petitioner has not presented evidence sufficient to overcome the "strong but rebuttable presumption that a federal claim was adjudicated on the merits by the state court,"[30] *English*, 900 F.3d at 811 (internal quotation marked omitted), as he has not provided "reason to think some other explanation for the state court's decision is more likely." *Harrington*, 562 U.S. at 99-100. Thus, because the state-court

[30] Granted, the appellate court's decision only mentions *Santobello* "in a string cite", *Harrington*, 562 U.S. at 99-100, but that fact alone only makes the presumption *possibly* rebuttable; it does not require the Court to find that the presumption has been rebutted. Given the information before the Court as a whole, the presumption has not been rebutted here.

adjudication of Petitioner's breach of plea agreement claim was "on the merits," the Court will apply AEDPA deference. 28 U.S.C. § 2254(d).

Based on its review of this claim, the Court cannot conclude that the state court's decision was an unreasonable application of federal law or an unreasonable determination of the facts.

The Tennessee Court of Criminal Appeals addressed Petitioner's breach of the plea agreement claim in the next to last paragraph of its opinion. The court concluded that "[t]here was no promise or agreement by the State that Petitioner would not be subject to mandatory lifetime community supervision," nor is there any "indication in the record that Petitioner relied on such promise or agreement concerning lifetime community supervision in coming to terms with the State." *Avila-Salazar*, 2022 WL 1415709, at *8.

"Plea agreements are contractual in nature. In interpreting and enforcing them, this [c]ourt uses traditional principles of contract law." *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Plea agreements must "be enforced according to their terms." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). "Ambiguities in a plea agreement must be construed against the government." *United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002). The Sixth Circuit Court of Appeals has recognized that "[t]he leading decision on the consequences of the failure of prosecuting authorities to abide by a plea agreement is *Santobello v. New York*, 404 U.S. 257 (1971)." *Cohen v. United States*, 593 F.2d 766, 771 (6th Cir. 1979). In *Santobello*, the defendant entered into a plea agreement that stated the prosecutor would not make any sentence recommendation. 404 U.S. at 262. At sentencing, however, a new prosecutor who replaced the prosecutor who had negotiated the plea agreement recommended the maximum one-year sentence, "apparently ignoring of his colleague's commitment." *Id*. at 259. The Sixth Circuit held that the government breached the plea agreement; the inadvertent breach did not lessen its impact and it

did not matter that the sentencing judge explicitly said he was "not at all influenced" by what the government said. *Id*. at 262. That is because, where a defendant fulfills his promise in entering into a guilty plea, the prosecution is bound to fulfill any promise made in exchange, in order to insure the "fairness" of the plea bargaining process which has come to be known as an essential and desirable practice in the administration of criminal justice. 404 U.S. at 261; *see United States v. Barnes*, 278 F.3d 644, 647 (6th Cir. 2002) (quoting *Santobello*, 404 U.S. at 261)) ("Because a defendant is foregoing these precious constitutional guarantees when entering into a plea agreement with the government, it is essential that 'fairness' on the part of the prosecutor is presupposed.").

"'[F]undamental fairness means that the courts will enforce promises made during the plea bargaining process that induce a criminal defendant to waive his constitutional rights and plead guilty.'" *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991) (quoting *Staten v. Neal*, 880 F.2d 962, 963 (7th Cir. 1989)). 404 U.S. at 262. The "touchstone of *Santobello* is whether the prosecution met its commitment . . . ." 404 U.S. at 272. Satisfying this obligation requires more than lip service on a prosecutor's part." *Moncivais*, 492 F.3d at 662. The government may not explicitly repudiate the agreement or engage in an "end-run[ ] around" the promises contained in the agreement. *Id*. (internal citations and quotations omitted). If a petitioner can establish that the government breached the terms of the plea agreement, he is entitled to relief from the district court regardless of whether the district court was ultimately influenced by the breach and regardless of whether the breach was inadvertent.

It is undisputed that neither the transcript of Petitioner's guilty plea hearing nor Petitioner's guilty plea agreement reference the community supervision for life requirement. There is no ambiguous provision concerning supervision. Indeed, Petitioner does not allege that the

prosecution induced him to accept the plea agreement by including a promise within the agreement, or otherwise, that Petitioner would *not* be sentenced to lifetime community supervision, and later reneged on that promise by procuring the amended judgment. Rather, Petitioner argues that he would not have accepted the plea agreement had he known that he would be sentenced to mandatory lifetime community supervision. By failing to include the condition in the plea agreement, Petitioner contends, the prosecutor misled Petitioner to believe that his sentence would not include lifetime supervision, thereby inducing Petitioner to accept the plea. These arguments lend more support to a claim that Petitioner's guilty plea was not voluntarily and intelligently made, which Petitioner alleges in Claim II herein and the Court addresses below.[31]

---

[31] In deciding Petitioner's breach of plea agreement claim, the Tennessee Court of Criminal Appeals noted that the State's breach of a plea agreement may be a ground for post-conviction relief but found that "in this case there was no material breach of the plea agreement by the State." *Avila-Salazar*, 2022 WL 1415709, at *8.

The state court's opinion seems to conflate the analysis of two different arguments, likely because Petitioner intertwined allegations of due process violations with allegations of breach and ineffective assistance of counsel in his state-court filings: an argument that the State explicitly promised not to include a condition of lifetime supervision in the plea agreement, then later breached that promise by amending the judgment for attempted aggravated rape, requiring an analysis of whether a breach of such term was material; and another argument that Petitioner would not have accepted the plea had he known that he could be sentenced to lifetime supervision, requiring an analysis of whether Petitioner's plea was knowing, voluntary, and intelligent. As to the former argument, Petitioner did not argue that there was an explicit promise by the State in the plea agreement that Petitioner would not be sentenced to lifetime community supervision, thus an analysis of whether such term was material if breached was unnecessary.

However, to the extent the Sixth Circuit finds that such an analysis was necessary with respect to Petitioner's breach of plea agreement claim, or finds that Petitioner exhausted his unknowing and involuntary guilty plea claim (Claim II of his federal habeas petition), the Court finds that the state court did not unreasonably apply federal law to the facts when it concluded that Petitioner's decision whether to plead guilty did not rest on whether he would be subject to mandatory lifetime community supervision, that is, that the condition of lifetime supervision was not a material term of plea agreement.

The record shows that dismissal of the felony murder charge was far more important to Petitioner than lifetime community supervision. *See Doyle v. Scutt*, 347 F. Supp.2d 474, 483-84 (E.D. Mich. Dec. 1, 2004) (citing *Santobello*, 404 U.S. at 262) ("This Court is not persuaded that petitioner's decision whether or not to plead no contest resulted in 'any significant degree' on when his restitution payment would begin" because "[d]ismissal of the habitual offender charges

Returning to the breach of plea agreement claim, Petitioner fails to show that the terms of the plea agreement were breached by the prosecutor or the trial judge. Although Petitioner claims that he understood the plea agreement *not* to include a condition of mandatory lifetime supervision, "[h]abeas relief should not be granted by crediting a petitioner's subjective version of his understanding of the plea bargain." *Doyle v. Scutt*, 347 F. Supp.2d 474, 483 (E.D. Mich. 2004) (citing *Nichols v. Perini*, 818 F.2d 554, 558-59 (6th Cir. 1987)); *see Myers v. Straub*, 159 F.

---

and other felony charges . . . was far more important."). During the plea hearing, Petitioner said: "What I want is for you to just sentence now to 40 years." *Avila-Salazar*, 2022 WL 1415709, at *2. He agreed that he was "willing to accept the 40-year sentence, which was above the range that [he] qualif[ied] in[.]" *Id*. His statements show that his focus was on avoiding a life sentence by accepting the 40-year plea offer.

Petitioner now argues that the condition of lifetime community supervision "is but yet another form of a life sentence, no better than the life he would have received had he went to trial and los[t] on the original 1st degree murder charge." (Doc. No. 1 at PageID 15). Petitioner's assertion fails to appreciate the minimum 15-year difference between the sentence he received after his guilty plea and the sentences (life and 51 years) to which he would have been exposed at trial. Further, it ignores the state appellate court's finding that "the evidence against Petitioner was overwhelming" as well as trial counsel's post-conviction hearing testimony that "he advised Petitioner that he was likely to be convicted of first-degree felony murder if the case went to trial rather than to a lesser-included offense . . . ." *Avila-Salazar*, 2022 WL 1415709, at *8.

The Court further notes that, to the extent Petitioner relies on *State v. Ward*, 315 S.W.3d 461 (Tenn. 2010), to prove materiality, his argument still fails. In *Ward*, the Tennessee Supreme Court held that "the mandatory lifetime supervision requirement is an additional part of a defendant's sentence[; therefore] the trial court is constitutionally required to inform the defendant of the supervision requirement as part of the plea colloquy." *Id*. at 464. If a trial court does not inform a defendant of this requirement, the conviction must be set aside unless the State proves that the error is harmless beyond a reasonable doubt. *Id*. at 474-76. In *Ward*, the court remanded the case to the trial court to vacate the judgment of conviction so that the defendant could withdraw his guilty plea and stand trial on the original charge. *Id*. at 477. In Petitioner's case, neither the trial court nor trial counsel advised Petitioner of the lifetime supervision requirement. However, the Tennessee Supreme Court held that *Ward* is not to be applied retroactively in collateral proceedings such as a post-conviction proceeding. *Bush v. State*, 428 S.W.3d 1, 21 (Tenn. 2014). Petitioner pled guilty on June 6, 2006, and the *Ward* decision was not filed until July 7, 2020. Therefore, *Ward* was not applicable at the time Petitioner entered his guilty plea, and *Bush* does not allow *Ward* to be applied retroactively.

As to the second argument referenced above, the Court addresses it herein (*see infra* at pp. 53-58) during its review of Claim II of Petitioner's federal habeas petition.

Supp.2d 621, 627 (E.D. Mich. June 28, 2001) (citing *Mask v. McGinnis*, 252 F.3d 85 (2d Cir. 2001) ("No U.S. Supreme Court opinion has held that all conditions promised in a plea bargain must be communicated to a defendant unambiguously.")). The terms of the plea agreement are clear. There is no showing that the State failed to honor a promise made in the plea agreement.

The state court's finding on this claim was not unreasonable. Claim I is without merit and will be dismissed.

2. <u>Claim II: Knowing, Voluntary, and Intelligent Plea</u>

In Claim II, Petitioner alleges that "Petitioner's pleas were entered unknowingly and involuntarily in light of the newly-issued amended judgment" for attempted aggravated rape. (Doc. No. 1 at PageID 6). Although there is factual overlap, this claim is a separate and distinct claim from Petitioner's breach of plea agreement claim. Both claims implicate Petitioner's federal constitutional right to Due Process, but the claims are analyzed under different constitutional frameworks.

For a federal court to hear a petitioner's habeas claim, "a state prisoner is required to present the state courts with the same claim, or a claim 'substantially equivalent' to the claim, urged upon the federal courts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011) (quoting *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Respondent contends that Petitioner failed to exhaust this claim because he did not fully and fairly present it to the state courts before raising it in his instant federal habeas petition. (*See* Doc. No. 12 at PageID 1007).

On July 30, 2018, Petitioner filed a pro se petition for post-conviction relief claiming that his plea was entered "unknowingly and involuntarily in light of the newly issued/amended judgment of conviction for Count II." (Doc. No. 11-28 at PageID 649). However, when post-conviction counsel filed an amended petition, the only claim raised was an ineffective assistance

of trial counsel claim for failing to advise Petitioner that he would be subject to community supervision for life on his attempted aggravated rape sentence therefore his guilty plea to both second-degree murder and attempted aggravated rape was not voluntarily, knowingly, or intelligently entered and should be set aside. (Doc. No. 11-28 at 700); *Avila-Salazar*, 2020 WL 241605, at *1-2. That is to say, counsel did not raise the same claim as Petitioner. In his 2019 appellate brief (on appeal from the denial of post-conviction relief), while asserting an ineffective assistance of counsel claim, Petitioner argued that his guilty plea was not voluntary and knowing and thus violated the "Due Process Clause of the Federal Constitution." (Doc. No. 11-30 at PageID 742-43).

Petitioner thus prosecuted the claim that his plea was involuntary and unknowing only in the context of an ineffective assistance of counsel claim. Even though both claims (due process and ineffective assistance of counsel) share a factual core—Petitioner's failure to understand his guilty plea's consequences—he failed to satisfy the requirements to fully and fairly present an independent Fourteenth Amendment Due Process claim that the plea itself was unknowing or involuntary to the state court.

In *Kelley v. Burton*, No. 22-1135, 2023 WL 2755654 (6th Cir. Apr. 3, 2023), the Sixth Circuit found the federal habeas petitioner's *Brady* claim to be unexhausted and procedurally defaulted where the petitioner's motions for state post-conviction relief were "centrally premised" on the argument that the prosecutor's knowing use of perjured testimony violated the petitioner's due process rights, not that evidence was withheld; the petitioner "referenced the jury's need to know about a witness's credibility, but only in the context of 'the prosecutors' duty to prevent lies from entering the evidence[.]'" *Id.* at *3. The Sixth Circuit cited two assertions that constituted Kelley's closest argument to a *Brady* claim. 2023 WL 2755654, at *3. However, said the Court,

"Kelley still never asserted that the evidence was withheld, stating rather that he is entitled to a new trial under state law and that the prosecutor violated due process by presented Ferguson's false testimony in Kelley's trial. The claims presented by Kelley to the Michigan state courts simply do not contain a *Brady* claim that evidence was withheld." *Id*. Here, Petitioner makes arguments in the context of his breach of plea agreement claim as well as his ineffective assistance of trial counsel claim that come close to the claim he raises in Claim II of his federal habeas petition. However, the claims presented by Petitioner to the Tennessee state courts did not raise an independent federal due process claim based on an unknowing and involuntary plea.

Similarly, in *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), the Sixth Circuit found the federal habeas petitioner's *Brady* claim was unexhausted and procedurally defaulted where the petitioner claimed in state court that the prosecutor suborned perjured testimony and the petitioner had received ineffective assistance of counsel for lack of pre-trial investigation into the prosecution witnesses. *Id*. at 304. The Court held that the similarity of the claims was not enough to exhaust Jalowiec's *Brady* claim because the theories of ineffective assistance and perjured-testimony failed to

> give the state courts the opportunity to apply the legal principles governing Jalowiec's present *Brady* claim. It is not enough that these different claims implicated some of the same facts . . . . It is not enough that the claims actually presented to the state courts were somewhat similar to the *Brady* claim in some respects. Nor is it enough to say that the *Brady* ramifications of Jalowiec's arguments were self-evident. The bottom line is that the state courts were not called upon to apply the legal principles governing the constitutional claim not presented to the federal courts.

*Jalowiec*, 657 F.3d at 304.

Jalowiec's and Kelley's reasoning applies to Petitioner's petition. S*ee also Picard*, 404 U.S. 270, 275-76 (emphasizing that federal claim raised in a federal habeas petition must be "fairly presented to the state courts" because the exhaustion doctrine "would serve no purpose if it could

be satisfied by raising one claim in the state courts and another in the federal courts."). The Tennessee state court was never given a fair opportunity to rule on the independent due process claim (Claim II) because Petitioner framed the issue as one of ineffective assistance of counsel (and arguably, plea of breach agreement) *See Picard*, 404 U.S. at 275-76 (where petitioner presented "all the facts" but failed to bring the constitutional claim to the court's attention and the court "dealt with the arguments [petitioner] offered", the court cannot be faulted "for failing also to consider sua sponte" other claims "found inherent in those facts"). Thus, the claim is unexhausted.

The state court remedies are no longer available on this claim due to the statute of limitations and the one-petition rule for filing a petition for post-conviction relief. *See* Tenn. Code Ann. § 40-30-102. By failing to fully and fairly present the federal constitutional claim to the state courts, Petitioner procedurally defaulted it. 28 U.S.C. § 2254(c); *Coleman*, 501 U.S. at 732. Therefore, federal habeas review of Claim II is barred unless Petitioner establishes cause for the default and actual prejudice or that the Court's failure to address this claim would result in a fundamental miscarriage of justice.

Petitioner has not demonstrated (or even argued) sufficient cause and prejudice to excuse the default of Claim II, and he has not shown that a fundamental miscarriage of justice will occur if the Court does not entertain his defaulted claim. Therefore, the claim will be dismissed.

Alternatively, if the Court were to find that Petitioner exhausted this claim by presenting the factual basis for this claim and citing to relevant case law applying federal constitutional analysis (*see Kelley*, 2023 WL 2755654, at *6, 9) (Cole, J., dissenting), the Court finds that the state court did not unreasonably apply federal law to the facts when it concluded that Petitioner's decision whether to plead guilty did not rest on whether he would be subject to mandatory lifetime

community supervision, that is, that the condition of lifetime supervision was not a material term of plea agreement.

"It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Alford*, 400 U.S. at 31). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.

According to Petitioner, his plea was not knowingly, voluntarily, and intelligently entered because he did not understand that one of the consequences of his plea to attempted aggravated rape was the imposition of lifetime community supervision. The state appellate court's decision as to this issue was not based on unreasonable facts or law. Petitioner's contention that he would not have entered a plea if he had known about the supervision condition lacks credulity for the reasons explained above. (*See supra* at 51-52 n.31). *See Reynolds v. Rewerts*, No. No. 1:19-cv-383, 2019 WL 3213759, at *8 (W.D. Mich. July 17, 2019) (while considering petitioner's argument that his plea was not knowingly, voluntarily, and intelligently entered, finding that his "contention that he would not have entered a plea if he had known the scoring might include 10 points for Offense Variable 3 is entirely disingenuous" and rejecting claim that he would not have entered a guilty plea if he had known that he might have to pay restitution). Petitioner made "a voluntary and intelligent choice among the alternative courses of action open to [him].'" *Hill v*, 474 U.S. 52, 56. Had Petitioner declined the plea agreement, he would have been exposed to a sentence of 51 years

or life on the felony murder charge, and the evidence of his guilt was overwhelming. Additionally, even after his conviction, Petitioner could have avoided lifetime supervision by accepting the State's offer to vacate his attempted aggravated rape conviction, but he declined it. *Avila-Salazar*, 2020 WL 241605, at *2. His choice strongly suggests that lifetime supervision was not a material factor in Petitioner's decision to plead guilty. Accordingly, Petitioner would not be entitled to relief on Claim II even if the claim were not procedurally defaulted without cause.

3. Claims III and IV: Ineffective Assistance of Trial Counsel

In Claim III, Petitioner alleges trial counsel "was ineffective for failing to ensure that Petitioner's pleas were knowing and voluntary." (Doc. No. 1. at PageID 19). In Claim IV, Petitioner alleges trial counsel "was ineffective for failing to ensure that Petitioner's pleas were knowing and voluntary in the context of his mandatory lifetime supervision as a sexual predator." (*Id.*) Although Petitioner identifies these claims as separate, he does not make separate argument as to each claim (*id.*), and the Court discerns no distinction. The Court therefore will analyze Petitioner's allegations with respect to his trial attorney's alleged ineffectiveness as one claim, as did Respondent in responding to the petition.

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

As discussed above, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holding of the United States Supreme Court, § 2254(d)(1); that it "involved an unreasonable application of" such law; or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1),(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, such as here, the

question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court clarified in *Harrington*:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (internal quotation marks and citation omitted). The Court now turns to Petitioner's exhausted ineffective assistance of counsel claim.

First, the claim is exhausted.[32] Thus, this Court's review of Petitioner's ineffective-assistance claim is not *de novo* but is instead subject to the limitations imposed by AEDPA, as discussed above.

In his numerically second post-conviction petition, Petitioner alleged that trial counsel was ineffective for failing to advise Petitioner that he would be subject to community supervision for life on his attempted aggravated rape sentence and therefore his guilty plea to both second-degree murder and attempted aggravated rape was not voluntarily, knowingly, or intelligently entered and should be set aside. *Alejandro Avila-Salazar*, 2020 WL 241605, at *1-2. The Tennessee Court of Criminal Appeals remanded the case to the post-conviction court for a ruling on the merits of this claim, as the petition had originally been summarily dismissed. *Id*. at *5.

---

[32] Respondent concedes this claim is exhausted. (*See* Doc. No. 12 at PageID 1000).

On appeal, the appellate court reversed the order dismissing the post-conviction petition and remanded for a ruling on the merits of Petitioner's claim of ineffective assistance. The post-conviction court vacated Petitioner's guilty plea to attempted aggravated rape but upheld the plea as to second-degree murder. *Avila-Salazar*, 2022 WL 1415709, at *5-6. On appeal of that decision, the State argued that the post-conviction court erred by vacating Petitioner's attempted aggravated rape conviction because Petitioner failed to meet his burden of proof after asserting in his post-conviction petition that trial counsel was ineffective for failing to advise him that he would be subject to community supervision for life for his attempted aggravated rape conviction. The State asserted that Petitioner failed to "prove a reasonable probability that, but for trial counsel's failure to advise him of the community supervision for life requirement, he would not have pleaded guilty and would have insisted on going to trial," and therefore, Petitioner failed to prove prejudice. The Tennessee Court of Criminal Appeals agreed with the State and reversed the judgment of the post-conviction court and reinstated the conviction and sentence for attempted aggravated rape, determining that Petitioner failed to show that, but for trial counsel's deficiency, he would not have pled guilty and would have proceeded to trial. *Id*. at *8.

These findings were not contrary to law. The appellate court correctly cited and applied the relevant clearly established federal law to its analysis of this claim. The Tennessee Court of Criminal Appeals began its analysis by noting that, "[i]n the context of a guilty plea, to demonstrate that trial counsel's deficient performance prejudiced the defense, a petitioner must prove that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Avila-Salazar*, 2022 WL 1415709, at *7 (quoting *Hill*, 474 U.S. at 59). The court quoted *Strickland* for the proposition that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S.

at 694)). The court continued, "[b]ecause a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them." *Id*. (citing *Goad*, 938 S.W.2d at 370))

The appellate court reasonably applied *Strickland's* performance prong. The appellate court agreed with the lower court that trial counsel rendered deficient performance by failing to advise Petitioner that he was subject to mandatory community supervision for life for his attempted aggravated rape conviction at the time he entered his plea. The record establishes that trial counsel did not inform Petitioner that lifetime community supervision would be a consequence of his guilty plea at sentencing. Community supervision requirement is "punitive" and "carries 'significant' consequences, including the payment of a supervision fee and regular reporting to a parole officer who has the discretion to impose conditions of supervision." *Calvert v. State*, 342 S.W.3d 477, 490 (Tenn. 2011) (quoting *Ward*, 315 S.W.3d at 474). Although "[t]he United States Supreme Court has not addressed whether a defendant must be advised that a guilty plea to certain sexual offenses will subject him to mandatory lifetime community supervision", courts have found that a defendant is entitled to consider such significant consequences before accepting a guilty plea, relying on the Due Process Clause to the United States Constitution and the requirement that a guilty plea must be knowingly, voluntarily, and intelligently entered. *See United States v. Smagola*, 390 F. App'x. 438, 442-43 (6th Cir. 2010) (holding that a failure to inform a defendant that he will be subjected to supervised release affects a defendant's substantial rights where nothing in the record suggests that the defendant knew his sentence would include supervised release); *Harris*, 2015 WL 3823945, at *16 (citing *Ward*, 315 S.W.3d at 465).

The appellate court also reasonably applied *Strickland's* prejudice prong. The court found that Petitioner had not demonstrated that he was prejudiced by trial counsel's deficient

performance. In explaining its reasoning, the court first noted that the Post-Conviction Procedure Act "requires a petitioner to testify at the post-conviction hearing 'if the petition raises substantial questions of fact as to the events in which the petitioner participated.'" *Avila-Salazar*, 2022 WL 1415, at *7 (quoting *Timothy Evans v. State*, No. E2017- 00400-CCA-R3-PC, 2018 WL 1433396, at *4 (Tenn. Crim. App., Mar. 22, 2018) (quoting Tenn. Code Ann. § 40-30-110(a) and citing Tenn. Sup. Ct. R. 28, § 8(C)(1)(b)); *Christopher M. Heath v. State*, No. M2016-01906-CCA-R3-PC, 2017 WL 3382804, at *4-5 (Tenn. Crim. App., Aug. 7, 2017)). The court further noted that, although the parties agreed that Petitioner was not advised of the community supervision for life requirement, he did not present any proof at the post-conviction hearing that he would not have pled guilty to attempted aggravated rape had he been advised of the requirement. *Id*.

"The second, or 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. As to that requirement, the appellate court held:

> As previously pointed out by this court concerning the denial of Petitioner's habeas corpus petition, the "overwhelming majority" of Petitioner's guilty plea hearing was focused on Petitioner's plea to second-degree murder as a lesser-included offense of first-degree murder, and "his plea to attempted aggravated rape was not mentioned until the very end of the hearing when the trial court had to inform the parties that [Petitioner] had an additional charge to resolve." *Alejandro Avila-Salazar*, 2017 WL 2334880, at *3. This court further noted that disposition of the first-degree murder charge was "more likely the material element" of Petitioner's plea agreement, and Petitioner had not presented "any proof from the record that there [was] a 'reasonable probability' that the proceeding would have been different had the attempted rape sentence been legal." *Id.*
>
> Petitioner has failed to show that but for trial counsel's mistake in not advising him of the mandatory community supervision for life requirement, he

> would not have pled guilty and would have proceeded to trial. Because Petitioner failed to prove prejudice, the post-conviction court erred by concluding that Petitioner was entitled to relief on his claim of ineffective assistance of counsel, and its judgment in vacating Petitioner's conviction for attempted aggravated rape is reversed.

*Avila-Salazar*, 2022 WL 1415709, at *8.

Given the facts before it, the court's conclusion that Petitioner failed to prove prejudice was not unreasonable. As the Court already has noted herein, the record shows that dismissal of the felony murder charge was far more important to Petitioner than lifetime community supervision. During the plea hearing, Petitioner's statements indicated a focus on avoiding a life sentence. *See Avila-Salazar*, 2022 WL 1415709, at *2 ("What I want is for you to just sentence now to 40 years.").

And even though Petitioner now argues that the condition of lifetime community supervision "is but yet another form of a life sentence, no better than the life he would have received had he went to trial and los[t] on the original 1st degree murder charge" (Doc. No. 1 at PageID 15), he ignores the minimum 15-year difference between the sentence he received after his guilty plea and the sentences to which he would have been exposed at trial, the state appellate court's finding that "the evidence against Petitioner was overwhelming", and trial counsel's post-conviction hearing testimony that "he advised Petitioner that he was likely to be convicted of first-degree felony murder if the case went to trial rather than to a lesser-included offense . . . ." *Avila-Salazar*, 2022 WL 1415709, at *8. *Cf. Porter v. Johnson*, No. 3:14-cv-01798, 2015 WL 1549274, at *19 (M.D. Tenn. Apr. 8, 2015) (finding that the state court reasonably determined that petitioner had not shown that he was prejudiced by his attorney's failure to provide information about the sex-offender registry and lifetime community supervision where petitioner "agreed only that such knowledge would have affected his decision whether to 'consider' the offer"). Moreover, during

state post-conviction proceedings, the State offered to vacate Petitioner's attempted aggravated rape conviction, thereby eliminating the lifetime supervision requirement while leaving his second-degree murder conviction and sentence intact, but Petitioner declined the offer. *Avila-Salazar*, 2020 WL 241605, at *2. This strongly suggests that lifetime supervision was not a material factor in Petitioner's decision to plead guilty.

The Tennessee Court of Criminal Appeal's decision with respect to Claims III and IV was not contrary to any federal law, did not unreasonably apply any federal law, and was not based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). Petitioner has failed to demonstrate that the appellate court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington*, 562 U.S. at 103. Consequently, the Court finds that Petitioner is not entitled to relief on Claims III and IV. The claims will be dismissed.

In summary, Petitioner is not entitled to relief under Section 2254 because each of his four claims either is without merit or is procedurally defaulted without sufficient cause. Moreover, Petitioner has not shown that failure to consider his defaulted claim will result in a fundamental miscarriage of justice. The petition therefore will be denied in its entirety.

## VI. CONCLUSION

For the reasons set forth herein, Petitioner's Motion to Produce Transcripts (Doc. No. 38) is **DENIED**. His alternative Motion to Compel the Court to Issue Specific Factual Findings is **GRANTED**.

The petition filed by Alejandro Avila-Salazar seeking relief under 28 U.S.C. § 2254 is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

## VII. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Claim II was procedurally defaulted without cause. Claims I, III, and IV are without merit, as explained herein. Because jurists of reason would not disagree with the resolution of Petitioner's Claims I, III, and IV, the Court **DENIES** a COA as to those claims. However, Petitioner may seek a COA from the Sixth Circuit.

With respect to Claim II, the Court finds that reasonable jurists could disagree as to whether Petitioner procedurally defaulted the claim. *See Kelley v. Burton*, No. 22-1135, 2023 WL 2755654 (6th Cir. Apr. 3, 2023) (Cole, J., dissenting). However, jurists of reasons would not disagree as to the Court's alternative holding herein that Claim II does not warrant relief on the merits. Accordingly, the Court also **DENIES** a COA as to Claim II. *Cf. Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (when claim is denied on procedural grounds, a COA may issue only if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right, **and** [] jurists of reason would find it debatable whether the district court was correct in its procedural ruling." (emphasis added)).

Although this Court has denied a COA as to all claims, Petitioner may seek a COA from the Sixth Circuit.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE